## No. XVI.

### BOARD OF LAND COMMISSIONERS v. JESSE WALLING, ASSIGNEE.

#### (See Note 52.)

*Appeal from Nacogdoches.*

HEMPHILL, JUSTICE.—Jesse Walling, in his petition, states that Joshua Seeting, then residing in the county of Nacogdoches, did on the day of the date of the declaration of independence sell and transfer to him the claim of the said Seeting to a league and labor of land, to which he was entitled as a resident citizen of Texas and head of a family; that having made application to the board of land commissioners, they refused to issue either to him as assignee, or to the said Seeting, a certificate for a league and labor of land. On the trial before the district court, the said Walling introduced in evidence the instrument purporting to transfer the headright of Seeting to himself, the district attorney excepting to its introduction. It was also proved that Seeting was a citizen of Texas at the date of the declaration of independence; that he was a married man,

Cranch, 358; Postmaster-General v. Early, 12 Wheat., 136; Hadden v. Collector, 5 Wall., 107; Y. & M. V. R. Co. v. Thomas, 132 U. S., 174.

**Note 41.**—Forbes, Brooks & Co. v. Hill, p. 486.

Defendant in execution has the right to point out property to be levied on. Scott v. Allen, 1 T., 508; Cloud v. Smith, 1 T., 611; Bryan v. Bridge, 6 T., 137; Wilson v. Smith, 50 T., 365; Atchison v. Hutchison, 51 T., 223; Railway

a head of family, and served in the army in 1835; but it was not proven that Seeting was here at the time of the application for the certificate to the board of land commissioners, nor was he here at the passage of the land law in 1837. The jury returned a verdict in favor of Walling, and from the judgment of the court thereon an appeal has been taken on behalf of the Republic to this tribunal. There are some questions arising from or intimately connected with the consideration of this cause of a magnitude and importance sufficient to exercise the deepest interest and to demand the most patient investigation, but as the urgent and unfavorable circumstances under which we are pressed to the hasty preparation of our opinion will not permit more than an imperfect examination of such point or points alone as are decisive of the controversy, our attention will in this case be directed to the single but controlling question of whether under the laws the appellee could sustain his claim to land as set forth in his petition, without proving, as required by the twelfth section of the land law of 1837, that his assignor was actually a resident of the Republic at the period of the application for the grant. By the provisions of the Constitution, lands are granted to all persons living in Texas at the period of its adoption, viz: to heads of families, one league and one labor of land; and to single men, one-third of a league. But although their claims have thus been sanctioned by the paramount authority of the Constitution, yet no mode was prescribed in that instrument by which an individual could obtain a separate portion of the public domain in satisfaction of his claim, or by which a title for the same might be secured or perfected. No surveys were authorized or titles ordered to be granted for that purpose, but on the contrary it was expressly declared that no survey or title, which might be made after the adoption of the Constitution, should be valid, unless such survey or title was authorized by the Convention, or some future Congress of the Republic. As no process then was provided by the Constitution by which such claimant might receive his share of the public lands, was it competent for those claimants or any of them to institute proceedings before the judicial tribunals of the country against the government, for the purpose of procuring a title or grant to a separate share of the public domain, without the previous sanction of legislative authority for the prosecution of such an action? That it is one of the essential attributes of sovereignty not to be amenable to the suit of a private person without its own consent, has grown into a maxim sanctioned as well by the laws of nations as the general sense and practice of mankind. Such an exemption is enjoyed by all independent sovereignties, and nowhere within the scope of our investi-

---

v. Wright, 88 T., 346; Jackson v. Browning, 1 App. C., sec. 606. Provision of statute requiring officer to request defendant to point out property is directory, and failure to do so does not render sale void, in the absence of fraud. Pierson v. Flanagan, 52 T., 266; Odle v. Frost, 59 T., 684; Allen v. Pierson, 60 T., 604; Stone v. Day, 69 T., 13; Beck v. Avondino, 82 T., 314; Alexander v. Benner, 10 T. C. A., 111; Fatheree v. Williams, 13 T. C. A., 430; Ellis v. Harrison, 24 T. C. A., 20; Barbee v. Heflin, 1 App. C., sec. 744; McKennon v. McGown (T. Sup.), U. R. C., 1889. Only entitled to reasonable opportunity to point out, and officer is not required before making levy to

gation has the institution of judicial proceedings to recover claims from a State or nation been regarded as a matter of natural, legal or constitutional right. Governments are instituted to promote the happiness of the whole community, but their beneficent powers would be paralyzed and their ends defeated were they subjected to the embarrassments, arising from the perpetual suits which, were they matters of right, could be prosecuted by every individual for the redress of real or supposed grievances. The experience of ages and the wisdom of the most enlightened statesmen and judicial expositors have sanctioned the doctrine, that less injury would arise from the delay or even the denial of justice to individuals than from the distraction and imbecility consequent upon the government's being involved in continual and harassing controversies, at the will or caprice of every citizen in the community. We intend not, however, to consider or combat the objections which have been urged against this great conservative principle. It has long been established even in governments most favorable to human liberty, and can not be questioned or controverted That wise governments will always do justice to its individual citizens is to be presumed, but should it be refused or delayed, and if for reasons essential to the safety or welfare of the State, or if even from the mere exercise of despotic authority, the government would not consent that claims against itself should be adjudicated in courts of justice, it would be impossible to obtain relief through the instrumentality of judicial proceedings. The wrong might be of a grievous nature, but the powers of judicial tribunals, however great they may be, are not of a character so transcendent as to enable them to afford the remedy. Vide 3 Story on Const., p. 535; Federalist, No. 80; Chisholm v. Georgia, 2 Dall., 419; 2 Pet., 635, 674; 1 Black. Com., 241, 243; 1 Term Rep., 172.

As the appellee then could not sue the government without its consent expressed in a legislative act, let us inquire whether there is any such provision of law as would authorize him to appear before any tribunal and obtain any such warrant or order as would secure a survey and title for the amount of land embraced in his claim. By the eleventh section of an act to reduce into one act and amend the several acts relating to the establishment of a general land office, passed December 14, 1837, boards of land commissioners were established in the several counties for the investigation of headright claims to land, and upon the production of the proof prescribed by the law they were authorized and required to grant

---

seek defendant out of the county. Cook v. De la Garza, 13 T., 431; Sydnor v. Roberts, 13 T., 598; Kendricks v. Rice, 16 T., 254; Choate v. Redding, 18 T., 579; Atchison v. Hutchison, 51 T., 223, 233; Kingsland v. Harrell, 1 App. C., sec. 739. May be pointed out by agent of defendant. Cornelius v. Burford, 28 T., 202. By plaintiff or his agent when defendant fails to point out. Bryan v. Bridge, 6 T., 137; Kendrick v. Rice, 16 T., 254; Batte v. Chandler, 53 T., 613. By surety when his principal fails to do so. Martin v. Rice, 16 T., 157. Officer is not required to find personal property to levy on. Smith v. Frederick, 32 T., 256; Pierson v. Flanagan, 52 T., 266; Anderson v. Oldham, 82 T., 22; Ellis v. Harrison, 24 T. C. A., 20. Officer is not bound to levy on property pointed out by defendant when it does not belong to him or when it is exempt property. Ross v. Lister, 14 T., 469; Carey v. Tinsley, 22 T., 383;

certificates to the claimants. The twelfth section provides for the number of witnesses, as well as the facts, which must be established before the issuing of a certificate; the purchaser of a headright being required to prove that the person represented as entitled to the same was actually a resident in the Republic at the time the application for the grant was made. The question arises, then, whether the appellee, as purchaser of Seeting's headright, could obtain a certificate on any other proof than such as was required by the law. This authority to sue the Republic for his claim was derived from this law, and without this or some other legislative act it could not have been investigated by any tribunal, whether of limited or general jurisdiction. Can he then invoke the aid of this law for the purpose of perfecting his title, with complying with the conditions which qualify the tender of its assistance? As it was through the agency of Congress alone that land claims could be established into grants, it was surely competent for that body to prescribe the conditions and proofs essential to the recognition of these claims, and its power for that purpose is assuredly not to be questioned, when its exercise does not conflict with any of the provisions of the Constitution. We can not perceive that this fundamental law is violated by the requisition of the statute, that where claims, similar to the one in dispute, are set up against the government, the purchaser should be required to prove that his vendor was a resident of the Republic at the period of the application for the grant. We will not now enter upon a review of the various provisions of the Constitution to sustain this position, nor do we intend to decide any questions relative to sales of lands, or the requisites which may be supposed essential to their validity. Under the law of 1837, purchasers of headrights are entitled to certificates therefor, on making the necessary proof. This law only provides for such claims as are recognized under the same. It does not' invalidate, in express terms, any claims to lands of any description, if we except the prohibition of suit by alien empresarios, though there may be various classes thereof, for the establishment of which no provision has been made. Should there be such claims in existence, they must, without further legislative action, continue to lie, as they do now, in a dormant condition. Legislative energy can alone quicken them into life, and sustain them to maturity; they can neither be surveyed nor perfected into a grant, and if they were, neither the surveys nor title could possess validity, the same having been made without the sanction of the Convention, or of a Congress of the Republic. It is hereby ordered, adjudged and decreed, that the judgment of the district court be and the same is hereby reversed.

*Reversed.*

---

Garvin v. Hall, 83 T., 295. Validity of sale is not affected by return failing to show that defendant was called on to point out property, or who pointed it out, or that notice of sale was posted as required by law. Howard v. North, 5 T., 290; Sydnor v. Roberts, 13 T., 598; Crabtree v. Whiteselle, 65 T., 111.

## No. XVII.

### JOHN GREGG v. JOHN YORK.

(See Note 53.)

*Appeal from Milam.*

OCHILTREE, JUSTICE.—In this case York sued out an original attachment against the estate of Gregg, returnable to the spring term of the District Court of Milam County, for the sum of $3400. At the fall term, 1840, of said court, a judgment was rendered against the defendant, from which said judgment a writ of error was taken to this court. It is not essential to a proper disposition of this cause that we should pronounce in detail upon the various errors assigned, but will confine our opinion to that assignment which sets forth that there is a material variance between the grounds of attachment sworn to in the affidavit of York and those recited in the writ of attachment as having been sworn to by him. The ground set forth in the affidavit is, that the said John Gregg resides beyond the jurisdiction of the courts of the Republic, so that the ordinary process of law can not be served on him; and further, that the said John Gregg is so making way with his property, that the said plaintiff will be likely to lose his debt. The writ describes the affidavit as follows: "Oath also having been made that the said John Gregg absconds or secretes himself, or resides beyond the jurisdiction of the court, so that the ordinary process of law can not be served against him, or is about to remove his property beyond the jurisdiction of the court," etc. Ala. Rep., 14. The writ of attachment is a summary remedy created by statute; the statute should be followed in all respects, and all the incidents pertaining to the remedy must be strictly complied with. See McCord, 312. Inasmuch as there is a material departure from the affidavit in the writ, the latter should have been quashed below, when the motion was there made. The writ is also double and uncertain as to the ground on which the plaintiff intended to found his attachment, and is not of such a definite and certain character as would enable the defendant to know what he had to answer, so that he might plead thereto a direct and unequivocal plea. 1 Chitty, 285. We are therefore of opinion that the court below erred in refusing to quash the attachment, and that the judgment below be reversed and annulled.

*Reversed.*

---

**Note 42.**—Tinnen v. Matthews, p. 491.

[1] Entire day should intervene between judgment by default nisi and the final judgment. O'Connor v. Towns, 1 T., 107; Wheat v. Davidson, 2 T., 196. Facts alleged in the petition are taken to be true and proven when judgment is by default. Long v. Wortham, 4 T., 381; Willard v. Conduit, 10 T., 213; Crain v. Griffis, 14 T., 358; Guest v. Rhine, 16 T., 549; Watson v. Newsham, 17 T., 437; Prince v. Thompson, 21 T., 480; Ricks v. Pinson, 21 T., 507; Morrison v. Van Bibber, 25 T. Supp., 153; Farr v. Wright, 27 T., 96; Niblett v. Shelton, 28 T., 548; Boles v. Linthicum, 48 T., 220; Evans v. Daniel, 25 T. C. A., 362; Mason v. Slevin, 1 App. C., sec. 11; Hawkins v. Haney, 1 App. C., sec. 723; Johnson v. Dowling, 1 App. C., sec. 1090; Whitaker v. Wallis, Landis

## No. XVIII.

### WILLIAM PATTERSON v. BRYAN AND KARNES.

*Appeal from Bexar.*

OCHILTREE, JUSTICE.—Patterson sued Bryan and Karnes in an action of debt on a protested draft. The defendants came into court and in general terms denied any indebtedness. Under this plea or answer, the defendants offered to prove by the books of the late firm of Bryan & Karnes that the plaintiff was indebted to the defendants in a sum exceeding the amount of the instrument sued on by the plaintiff, which testimony was rejected by the court as inadmissible under the plea of the defendants, on the ground that there was no plea or answer of the defendants stating such defense with a bill of particulars, and that so the evidence would operate surprise to the adverse party; to which opinion of the court the defendants' counsel excepted, and appealed to this court. The defendants' plea was filed on the 12th March, 1841, nearly twelve months after the passage of the statute allowing discounts and set-off, which is so entirely plain and positive in its terms that we can give no stronger reason for affirming the judgment of the court below, than by referring to the second section of the said act— page 62, Laws of 1840. We are therefore unanimously of the opinion that the judgment of the court below be affirmed, with 10 per cent damages thereon for delay, etc.

*Affirmed.*

## No. XIX.

### GEORGE HUFF, ADMINISTRATOR, ETC., v. JAMES K. McCREARY, CLERK, ETC.

#### (See Note 54.)

*Appeal from Austin.*

OCHILTREE, JUSTICE.—In this case, which was brought up by appeal from the county of Austin, it appears that the plaintiff instituted an action of debt against W. P. Huff and Thomas Barrett, by filing his petition in the office of the defendant, who was the clerk of the District Court of Austin County; that the defendant failed and refused to issue the citation prayed for in the petition as required by law, unless the plaintiff should first pay the cost thereof. At the fall term, 1841, of the district court, the plaintiff filed his motion for a rule against the defendant to show cause why he had not issued the writ of citation prayed for. The clerk answered to the rule, that the papers were duly prepared by him and tendered to the plaintiff upon the payment of costs, or on the plaintiff entering into security therefor. The rule was

discharged by the court below. By reference to the act of Congress establishing the jurisdiction and powers of the district court, volume 1, section 17, page 203, it will be seen that when any original process shall issue out of any court in this Republic, the plaintiff at the *return* of such process, or any time thereafter before final judgment, shall upon the motion of any person interested be ruled to give sufficient security for all costs, etc. The terms of the act gave the clerk no discretion. It was his imperative duty to have issued the citation and on the *return* of the process, or at any time thereafter, he might have made his motion for security for costs.

The rule should have been granted. It is therefore the unanimous opinion of the court that the judgment of the court below be reversed and the case remanded.

*Reversed and remanded.*

## No. XX.

### HUFF, ADMINISTRATOR, ETC., v. FOLGER, LAMB & CO

**(See Note 55.)**

*Appeal from Austin.*

BAYLOR, JUDGE.—Folger, Lamb & Co. sued Huff as the administrator of Samuel Sawyer, deceased, for the recovery of $1659.69, due by promissory note averred to have been lost during the revolution. They obtained a special verdict in their favor for the sum of $2499.35, being the amount of principal and interest for ten years at 5 per cent. The jury also found that the debt was contracted at New York, in the United States of America, and from the time of Huff's last acknowledgment of the debt to the time of commencing suit, a little longer than three years. On this verdict judgment was rendered for the plaintiffs, which is sought to be reversed here on the ground that the verdict and judgment is for interest at 5 per cent when no interest should have been allowed, or if any it should have been the interest of the State of New York, one of the States of the United States of America. Upon an examination of the facts of the case as certified to by the judge below, we find no proof therein contained showing what rate of interest is allowed by law in the State of New York, and as interest was computed by the jury at 5 per cent per annum for ten years, the supposed interest of this country, we think this was manifestly wrong. Where a contract is made in another country and with reference to that country, it must be governed by the laws of the place where it is to have its

& Co., 2 App. C., sec. 560; Welch v. Holmes, 2 U. C., 342. To warrant, facts must be stated with sufficient certainty to inform the court what judgment to enter without looking to evidence not within allegations. Judgment is void, if no cause of action is alleged in petition. Hall v. Jones, 3 T., 305; Johnson v. Davis, 7 T., 173; Pressly v. Testard, 29 T., 199; Townsend v. Ratcliff, 50 T., 148; Kimmarle & Hirsch v. H. & T. C Ry. Co., 76 T., 686; Hawkins v.

effect, and foreign laws must be proved as facts. The district court could not therefore judicially know, unless from the finding of a jury on evidence submitted to them (which the record shows was not the case in this instance), what rate of interest is allowed in the State of New York; under such circumstances neither the court nor the jury were authorized to give the supposed rate of interest of this country. See Story's Conflict of Laws, pp. 241, 291, and the authorities there cited. It is therefore the unanimous opinion of the court that the verdict be set aside, the judgment reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

## No. XXI.

### REBECCA CUMMINGS, ADMINISTRATRIX, v. ANTHONY BUTLER.

*Appeal from Austin County.*

JACK, JUSTICE.—This cause is brought into this court by a writ of error from Austin County. The plaintiff in error assigns among various other grounds, "that after judgment by default, and a writ of inquiry being ordered upon an unliquidated demand, the judgment was made final by the court without the intervention of a jury." The record shows that the defendant having failed to appear and answer, on motion of plaintiff's attorney judgment by default was rendered by the court, Friday, the 27th of April. This case was submitted to the court, whereupon judgment was rendered by the court against the defendant for the amount of $400, with interest from the 7th of April, 1839, till paid. The statute prescribes (volume 4, page 89) that in suits upon unliquidated demands the intervention of a jury must be had to ascertain the amount of indebtedness, before the judgment by default can be made final. Upon this ground the judgment of the district court must be reversed and remanded. It is therefore unnecessary to discuss the other causes of error which have been assigned.

*Reversed and remanded.*

## No. XXII.

### REBECCA CUMMINGS, ADMINISTRATRIX, v. OLIVER JONES.

(See Note 56.)

*Appeal from Austin County.*

JACK, JUSTICE.—This cause is brought by appeal from the District Court of Austin County. It was an action brought in that court by

---

Haney, 1 App. C., sec. 723; Stringfellow v. Thomson, 1 App. C., sec. 1111; Seastrunk v. Pioneer S. & L. Co. (T. C. A.), U. R. C., 1896. It can not be rendered on a contract different from that alleged in petition. Trabue v.

Oliver Jones against Rebecca Cummings, administratrix of John Cummings, to recover damages on a breach of covenant by the intestate in his lifetime. There was a verdict for the plaintiff, a new trial was asked for and refused by the court, and the defendant appealed. The record contains a statement of facts, certified by the judge below, containing many material facts as to the contract and breach thereof on the part of the intestate, and damages sustained by the plaintiff. But it does not show that the plaintiff proved a demand of the administratrix and her refusal to allow the claim as a debt against the estate. The counsel for the appellee insist that this court ought to presume that a demand was proven, inasmuch as the defendant's counsel below raised no objections to the want of such evidence, nor asked any charge of the judge in relation to it. This position would, we think, be correct, if the record itself did not contain a certificate of the judge that the statement of facts sent up contains all the evidence introduced on the trial below. We are bound to take the record as true. The question then presented to us is: did the plaintiff make out his case in the district court? The statute (volume 4, page 116) directs, that no bearer of a claim against a succession shall commence an action against such succession before presenting such claim to the administrator, etc., for allowance. That if the claim be not allowed by the administrator, the owner thereof, *for the purpose of establishing the same,* may bring his action, etc.

The petition must contain an allegation of such demand and refusal, and it is equally necessary to prove it. This proof in the case before us was not made in the trial below.

The verdict of the jury was not sustained by the evidence and a new trial ought to have been granted.

Let the judgment be reversed and the cause remanded.

*Reversed and remanded.*

## No. XXIII.

### CAVENAH v. SOMERVILL.

*Appeal from Matagorda County.*

OCHILTREE, JUSTICE.—We learn from the record sent up in this cause that at the fall term, 1840, of the District Court of Matagorda County, Alexander Somervill, the defendant in this action, recovered a judgment against Charles Cavenah, the plaintiff, and one Randal Jones, for the sum of $1000, with interest and costs, upon a note executed by said Cavenah and Jones to one Secrest, and by Secrest indorsed to Somervill. After the issuance of execution on said judgment, Cave-

Stoneum, 20 T., 453; Graves v. Farquhar, 20 T., 455; Johnson v. Stallcup, 41 T., 529. Nor when petition discloses a void or illegal contract. Moseley v. Smith, 21 T., 441; Campbell & Jones v. State Central Bank, 1 App. C., sec.

nah filed his petition, praying that the said judgment be enjoined, alleging the same to have been unjust, illegal and oppressive, for this, that the consideration for which said note was executed was insufficient, fraudulent, illegal and void. He further alleged, that at the trial at law he was prevented from attending court by the severe indisposition of himself and family; that about the time of the court his son-in-law died, so that his presence was imperatively required at home; that he had confided his defense to one Edward L. Homes, Esq., an attorney at law, who died before the trial, and that the attorney to whom his business had been committed, from the fact that he had not an opportunity of conferring with Cavenah, did not introduce the necessary testimony to establish his defense. Upon this petition, his honor, Wm. J. Jones, judge, etc., issued his order for a writ of injunction. Somervill, having been brought into court, demurred to the bill of Cavenah, on the ground that he, the said Cavenah, had appeared by counsel in the suit at law, and by his said counsel had pleaded the general issue, and that the matters and things set forth in his bill were properly cognizable before that tribunal, praying judgment, etc. The demurrer was overruled. Somervill then answered over, denying his knowledge of the consideration given for said note to Secrest, alleging that he had got it in the fair course of trade for a valuable consideration; denying all fraud or collusion in the transaction on his own part, or knowledge of it on the part of others. Upon this issue the cause was submitted to the jury; and the evidence proved that the note sued on had been made for the purpose and was staked on the event of a horse race, which was run between the horses of Secrest and Cavenah, and fairly won by Secrest. A verdict was returned for the plaintiff. We do not deem it necessary to recite any further portion of the testimony or proceeding in this case, saving so much of the charge of the presiding judge as was applicable to such points in the case as we feel it incumbent on us to decide. The court charged the jury that if they believed the note was based upon a gaming transaction, they should find for the plaintiff. The court charged further that at the civil law, horse racing was a species of gambling. The points in this case, presented for the action of this court are these:

1. Did the court below err in refusing to sustain the demurrer to the bill for injunction?

2. Could not Somervill, a bona fide holder, recover on the note?

Without expressly answering the first question, this court will intimate the opinion that it will at all times view with the strictest scrutiny applications for relief on the chancery side of our courts, against judg-

160. When citation is by publication, judgment by default does not dispense with proof of material facts. Doty v. Moore, 16 T., 591.

² Nature, validity, obligation, construction and interpretation of contracts are determined by the lex loci contractus, unless a different place is fixed by the parties for performance. Hill v. McDermott, Dal., 419; Huff v. Folger, Dal., 530; Scott v. Maynard, Dal., 548; Gautier v. Franklin, 1 T., 732; Hays v. Cage, 2 T., 501; Snoddy v. Cage, 5 T., 106; Andrews v. Hoxie, 5 T., 171, 189; Campbell v. Wilson, 6 T., 379, 390; Raymond v. Holmes, 11 T.,

ments at law rendered, as was the judgment in this case, after issue joined. Hard cases should not subvert established precedents. The sickness and other misadventures, as set forth in the petition of Cavenah, certainly would have afforded him ground for relief in equity, if it had appeared from the record that he was wholly unrepresented when his case was called for trial. But this was not the case; for his petition admits and the record shows that his attorney pleaded the general issue, and that under this issue the cause was submitted to the jury, and a verdict returned for Somervill, the then plaintiff. It would certainly be a violent presumption to suppose that Cavenah would have employed an attorney and left him in total ignorance of the nature of his defense. We will not say that the court erred in charging the jury that horse racing was such a species of gaming under the civil law as would preclude a recovery on a contract founded thereon. In this case the necessity does not exist for the exercise of that sort of judicial legislation which has been assumed by the courts both in England and many of the United States, by which they undertake to declare what is and what is not contrary to public policy.

Somervill answers, that he is a bona fide holder of the note; and no proof has been introduced to show that there was a scienter on his part, of the nature of the consideration for which the note was given, or the time at which he became the owner. Horse racing not having been declared by the civil law illegal, nor inhibited by statute, the innocent holder is entitled to recover. Chitty on Bills, p. 52. A motion for a continuance before trial, or for a new trial after verdict, would, we have but little doubt, have been sustained by the court who granted the injunction. These were the legitimate resorts of the party; having failed to make use of them, this court is not prepared to say that the plaintiff made such a showing as justified the court below in sustaining the bill for injunction. Illegality of consideration, unless it has been so expressly declared by the Legislature, will be no defense in an action at the suit of a bona fide holder without notice of the illegality, unless he obtained the bill after it became due. Chitty on Bills, 82.

The judgment of the court below is reversed, the injunction dissolved, and a procedendo awarded to the District Court of Matagorda County.

*Reversed.*

Judge Baylor says: "I concur in this opinion so far as the illegality of the injunction is concerned, but give no opinion on the other points involved in the case."

54; Hall v. Harris, 11 T., 300, 305; McLeod v. Board, 30 T., 238; Cantu v. Bennett, 39 T., 303; Weider v. Maddox, 66 T., 372; Life Assn. v. Harris, 94 T., 25; Appollos v. Standiforth, 3 T. C. A., 502; Merrielles v. State Bank, 5 T. C. A., 483; Tilliard v. Hall, 11 T. C. A., 381; M. K. & T. Ry. Co. v. Thompson, 11 T. C. A., 658; M. P. Ry. Co. v. Harris, 1 App. C., sec 1265. By place of performance. Ryan v. M. K. & T. Ry. Co., 65 T., 13; Seiders v. Life Assn., 93 T., 194; Life Assn. v. Harris, 94 T., 25; Good v. Caldwell, 11 T. C. A., 515; Applebaum v. Bates, 3 App. C., sec. 167. If to be partly performed in dif-

## No. XXIV.

### MAIDEN v. FARIS, BROWN AND CALDER.

*Appeal from Brazoria County.*

MORRIS, JUSTICE.—At the March term of the District Court for the County of Brazoria, in the year 1841, a judgment was obtained by the plaintiff against George Brown and Robert S. Calder by default (the action as to Faris having abated by his death). The suit was for damages for failure to comply with the conditions of a bond given by defendants, which bond was the foundation of the action, and the jury assess the damages at $1000. The record is brought into this court by writ of error and the following assigned as error: "that the judgment was rendered against Brown and Calder, when no sufficient service had been made upon Brown, one of the defendants." By reference to the record, we find the sheriff's return upon the writ and petition in these words: "Served George Brown with a copy of this writ and petition, by leaving the same at his house, on the 26th of February, 1839; service accepted by Calder." By reference to volume 1, Statutes of Texas, p. 201, we find that personal service of all process was required to be made on the defendant; and not until the 5th of February, 1840 (4th volume, p. 88), was that law modified or changed. We find that this writ and petition were issued and served previous to the passage of the last law. The defendants neither appeared nor answered, and the judgment went by default.

The defect is fatal, and the cause must be remanded for a new trial.

*Remanded.*

## No. XXV.

### MONROE EDWARDS v. THE REPUBLIC OF TEXAS.

#### (See Note 57.)

*Appeal from Brazoria County.*

OCHILTREE, JUSTICE.—Monroe Edwards, the plaintiff in error, was brought by writ of habeas corpus before the Hon. James W. Robinson, district judge, etc., on the 7th day of May, 1839, and after the hearing of testimony was recognized in the sum of $10,000, conditioned that he should make his appearance before the honorable the District Court for the County of Brazoria, at a court which was held at Brazoria on ——, to answer a charge of forgery. At the fall term, 1839, of the District Court of Brazoria, Edwards having failed to appear, a

ferent States, intention of parties governs. Ryan v. M. K. & T. Ry. Co., 65 T., 13. Seems that marriage contracts are an exception to general rule of lex loci contractus. Shreck v. Shreck, 32 T., 578. If subject of contract is land, the lex loci rei sitas governs. A mortgage executed without the State,

forfeiture of his recognizance was taken and a judgment nisi was entered against him; which judgment, without the issuance of scire facias, was made final at the next succeeding term of the court. On the 29th of November, 1842, Edwards, by his attorneys, Harris and Pease, addressed a petition to the Hon. R. E. B. Baylor, judge of the Third District, praying that writs of error and supersedeas might be granted, and that the record of the above stated case might be sent up to the Supreme Court for its adjudication. The prayer of the petitioners was granted.

Without entering upon the consideration of the various errors assigned in this case, we are of opinion that there is a preliminary question which will dispose of it. Should the writ of error have been granted on the petition of the *attorneys* of Edwards?

To fly from the laws and justice of his country has been wisely held to be one of the most heinous offenses of which man can be guilty; and while he continues contumaciously to evade those laws by force, or absence, he is certainly not entitled to any very particular protection. Were a practice like the present to obtain, the administration of justice in criminal cases would soon be little better than a farce. An offender against the laws, who had been so fortunate as to obtain bail, would certainly in every instance try the strength of his recognizance before he would submit his person to the ordeal of justice. If the judgment of forfeiture should be reversed, his securities would be saved harmless, while he himself would escape, "unwhipped of justice," to perpetrate his villainies upon the unfortunate community which had afforded him shelter. The remedy provided by the common law is commensurate with the offense, and though we have eschewed the process of outlawry as being incompatible with the genius of our institutions, yet we think that from the analogy which exists between the cases, we are fully authorized to retain the requisition of the common law, as applicable strictly to applications for writs of error in cases of outlawry, and to pronounce it as the judgment of this court, that in order to obtain a writ of error it is necessary in all criminal cases, on the trial of which his personal appearance is required by law, that the applicant should render himself into custody and come in person to the proper authority to pray it to be allowed him. 1 Chitty Crim. Law, 369.

Writ of error dismissed at the cost of the petitioners.

*Dismissed.*

contrary to its laws or public policy, is void. Cantu v. Bennett, 39 T., 303; Fowler v. Bell, 90 T., 150. Contract valid under lex loci contractus is valid everywhere, unless in contravention of lex fori. If void under lex loci contractus, void everywhere. Andrews v. Hoxie, 5 T., 171, 189; Shelton v. Marshall, 16 T., 344; Ryan v. M. K. & T. Ry. Co., 65 T., 13; Weider v. Maddox, 66 T., 372; Fowler v. Bell, 90 T., 150; Tuckett v. Herdic, 5 T. C. A., 690; T. & P. Ry. Co. v. Davis, 2 App. C., sec. 191. If lex loci contractus is not alleged and proved, lex fori will be applied. Hill v. McDermitt, Dal., 419; M. K. & T. Ry. Co. v. Cocreham, 10 T. C. A., 166. Whether a writ is wrongfully sued out, is determined by the laws of the State where it was obtained. Wiley v. Traiwick, 14 T., 662.

## No. XXVI.

EDWARD C. BEAZELY v. SAMUEL STINSON AND THOS. H. WOLF.

*Appeal from Harrison County.*

HEMPHILL, CHIEF JUSTICE.—This cause comes before this court upon an appeal from the District Court of Harrison County. The record shows that it was an action brought by the plaintiff for the recovery of the books, papers, etc., belonging to the office of the clerk of the County Court of Harrison. The plaintiff, Beazely, and the defendant, Wolf, both claim to be clerk; and the defendant pleaded that Pulaski and not Marshall was the legal seat of justice of Harrison County. The judge below overruled the plea as to the seat of justice of the county, and decided that Thomas H. Wolf was legally the clerk of the county court; and from this decision the plaintiff appealed. From the statement of facts which comes up, it appears that one C. K. Andrews was the clerk of the County Court of Harrison County previous to the division of that county into Harrison and the judicial county of Panola by an act of Congress. After such division Andrews became a candidate for and was elected clerk of the County Court of Panola, and Thomas H. Wolf was duly elected clerk of Harrison and entered upon the discharge of his duties; and Pulaski was selected as the seat of justice for Harrison County. Subsequently to these proceedings, the Supreme Court decided that the acts creating judicial counties were unconstitutional. Andrews then resigned his office of clerk of the County Court of Harrison County. The chief justice of Harrison County subsequently issued writs of election for clerk of the county court, when Beazely, having received the highest number of votes, claimed to have been legally elected clerk, gave bonds, etc. After the decision of the Supreme Court before alluded to, the chief justice of Harrison County issued writs of election, under the general law for the removal of county seats (see Acts of Congress, adjourned session of 1838, p. 1), when the town of Marshall received a majority of votes. It also appears from the statement of facts that Marshall is within five miles of the center of the county of Harrison. This court is of the opinion, under all the circumstances, that Andrews having accepted the office of clerk of the County Court of Panola County, an office which was incompatible with the discharge of the duties of his former office of Clerk of Harrison, he thereby vacated the same; and that the election of Wolf was legal, and that he, being the clerk of Harrison County, and in the discharge

**Note 43.**—Manlove v. Kinney, p. 493.

Notice of appeal is essential to appellate jurisdiction, and can not be waived. Lockhart v. Lockhart, 1 T., 200; Burr v. Lewis, 6 T., 76; Bennett v. Spillers, 7 T., 600; Hughes v. State, 33 T., 683; Thomas v. Childs, 36 T., 148; Loften v. Nalley, 28 T., 127; Holek v. Varona, 63 T., 65; Smithwick v. Kelly, 79 T., 564; Nickerson v. Nickerson, 65 T., 281; Western Union Telegraph Co. v. O'Keefe, 87 T., 423.

of his duties as such, and there being no vacancy, the election of Beazely was not authorized by law and could not confer the office upon him. The election for the county seat having been held according to law, and the place selected being within five miles of the center, was in compliance with the statute. We are therefore of opinion that the town of Marshall is the legal county seat for Harrison County. The judgment of the court below must therefore be affirmed.

*Affirmed.*

## No. XXVII.

### McILHANEY v. SECREST.

*Appeal from Fort Bend County.*

MORRIS, JUSTICE.—Secrest filed his petition in the District Court of Fort Bend County to enforce the execution of a deed from said McIlhaney to a certain tract of land, the equitable title to which the said Secrest alleged to be in himself. He stated at the close of his petition that defendant was a transient individual; that he was unacquainted with his place of residence, whether in the Republic or not; that ordinary citation might not be able to reach him; he therefore prayed publication of his petition, citing the party defendant to appear, etc. This prayer was granted by the court and publication ordered to be made for sixty days in some public gazette. At the term next succeeding the issuance of this order, a decree was entered in favor of plaintiff. A writ of error has been prayed for and granted to the defendant, and the record is sent up for the revision of this court. The error assigned is, that there was no sufficient or legal notice given to the defendant previous to the rendition of the decree—said judgment or decree having gone by default. By referring to the record we find that no copy of the writ or petition has been issued or served on the defendant. The only notification ever given or attempted to be given by the plaintiff of the pendency of his action was by the publication ordered by the judge to be made in accordance with his prayer. Our statute law nowhere authorizes or legalizes the service of process of any kind than personal service, with the single exception of cases of attachment, where in special cases mentioned it is required to give notice of the pendency of the attachment suit in some public gazette, etc. Texas Laws, vol. 5, p. 187. The first law with regard to the service of process, necessary to notify a party of the pendency of any action, confined it to the person. Texas Laws, vol. 1, p. 201. This was subsequently amended so far as to make serv-

---

**Note 44.**—McGill and Wife v. Delaplain, Administrator, etc., p. 493.

Court can not compel party to take nonsuit. Guest v. Guest, Dal., 394; Thomas v. Hill, 3 T., 270; Sandoval v. Rosser, 86 T., 682, 686.

ice sufficient, where a copy was left at the residence of an individual (Texas Laws, vol. 4, p. 88) ; which amendment has been since repealed, and the law now stands as it *aforetime was*.   No authority is given then in our statute law to notify a party defendant of the pendency of an action against him, *in ordinary cases,* by publication.   The case under consideration does not come under the provisions of the attachment law, and certainly the averment in his petition, which is not positive, and which does not show that it was impracticable to pursue the ordinary requisites of the law, ought not and did not authorize the court to permit a resort to a method of notification not provided for by our law and exceedingly questionable in any instance.   The judgment must therefore be reversed and the cause remanded.

*Reversed and remanded.*

## No. XXVIII.

### SAMUEL WHITING v. THOMAS R. MARSTON.

*Appeal from Harris County.*

OCHILTREE, JUSTICE.—Marston sued Whiting in the District Court of Harris County at the spring term, 1840, in an action of debt. Whiting filed his plea in abatement on oath to the jurisdiction of the court, averring that he was, at the time of the commencement of the suit and at the trial thereof, not a citizen of Harris County, but a citizen of Travis County.   The parties joined issue on the plea, waived a jury, and submitted the case to the presiding judge upon the evidence offered.   On an examination of the testimony, we do not feel inclined to disturb the judgment of the court below.   Let it be affirmed with damages for delay, etc.

*Affirmed.*

## No. XXIX.

### MICHAEL DE YOUNG v. JOHN T. PATTERSON.

*Appeal from San Augustine.*

JACK, JUSTICE.—This case is submitted upon a motion to dismiss the appeal for the want of jurisdiction.   Patterson sued De Young before a magistrate and obtained a judgment for about $75.   De Young appealed to the District Court for San Augustine County.   The appeal was dismissed from that court, and an appeal from that decision was taken to this court.   The statute regulating appeals from justice courts prescribes that the decision of the case in the district court shall be

---

**Note 45.**—Allcorn, Administrator, etc., v. Sweeny, p. 494.
Court has no power to enter an involuntary nonsuit.   Guest v. Guest, Dal., 394; Sandoval v. Rosser, 86 T., 682, 685.   Appeal does not lie from judg-

final.   We are of opinion that under this law no appeal lies from the district court upon causes brought before magistrates and appealed into the district courts.   The motion must be sustained and the appeal dismissed.

*Dismissed.*

Judge Baylor says:   "In this case I give no opinion."

## No. XXX.

### WHITING v. BRISCOE AND HARRIS.

#### (See Note 58.)

*Appeal from Harris County.*

OCHILTREE, JUSTICE.—Briscoe and Harris sued Whiting in the District Court of Harris County, in an action of debt, returnable to the fall term, 1839.   Whiting pleaded in abatement that he was at the time of suing out the plaintiff's writ a citizen of Bastrop County and not a citizen of the county of Harrisburg, and prayed judgment of the court, that they would not take cognizance, etc.   The plaintiffs took issue upon the plea and a jury were impaneled to try the issue.   The jury returned the following verdict:   "We, the jury, find that Samuel Whiting was a resident of the county of Harris on the 14th October, 1839"— which was the date of the writ or citation in this case.   The defendant, Whiting, then pleaded the general issue and submitted the case to the jury, who found a verdict for the plaintiffs and a judgment was rendered accordingly.   Whiting appealed.

There were several exceptions taken in the course of the trial below; but inasmuch as they were not of sufficient importance to attract the further attention of the distinguished counsel whose argument has been submitted to us in this case, we will confine our attention to the point which has been brought before us.   It is contended by the counsel for the appellant that the finding of the jury did not answer the issue presented by the plea; that although Whiting may have resided in Harrisburg County on the 14th October, 1839, the date of the issuance of the original writ, that there was an alias writ, issued on the 21st April, 1840, upon which he was served and brought into court to answer at the time when he resided in another county; and inasmuch as the statute requires that in all cases not herein excepted the citizen should be sued in the county in which he resides, that it is the place of residence, at the time of the service of the writ, which determines the jurisdiction of the court over his person.   This court is of a different opinion.   The party instituting the suit ascertained the residence of Whiting, and

ment of nonsuit by a justice of the peace on ground that plaintiff failed to appear.   Morgan v. Johnson, 4 T., 117.

commenced their suit in accordance with law. If Whiting afterwards, for the purpose of evading the jurisdiction, should have left the county in which the suit was instituted, it certainly could not be expected that the plaintiff should be reduced to the necessity of dismissing his suit, for the purpose of instituting another, when a like occurrence might happen. The residence of the party at the time of the institution of the suit determined the jurisdiction, and in this we unanimously concur. Let the judgment of the court below be in all things affirmed with damages, etc.

*Affirmed.*

## No. XXXI.

### WALKER AND WALKER V. McNEILS AND CALDER

*Appeal from Brazoria County.*

MORRIS, JUSTICE.—D. R. and E. B. Walker filed their petition, addressed to the equity side of the court, against L. H. and J. G. McNeil and R. M. Calder, alleging, that without consideration and by unlawful duress, they were coerced into the conveyance of certain lands and slaves to the defendants, as trustees for the use and benefit of Caroline E. Walker, wife of E. B. Walker, and her infant child E. B. Walker, and such other child or children as the said E. B. Walker and his wife Caroline B. Walker might have during their coverture, and praying that the said deed of conveyance should be delivered up to be canceled and forever declared null and void. The defendants admit the execution of the deed, but deny any knowledge on their part, at the time the deed was executed, that the plaintiffs were impelled thereto by fear of bodily injury, or by threats, violence, or duress of any kind. Upon the trial of the cause the judge directed two issues to be ascertained by the jury: 1. As to the duress. 2. Whether such blood relationship existed between the parties plaintiffs and Mrs. Walker and child as to support the trust.

The verdict returned by the jury upon these issues was, first, that there was no duress at the time of signing the deed; second, that the blood relationship between the Walkers and Mrs. Walker and child was sufficient to support the trust. Whereupon the petition of the plaintiffs was dismissed by the court and a judgment rendered against them for costs, from which judgment an appeal was taken to this court.

Before entering into the discussion of the material points involved

---

Note 46.—Wescott v. Menard & Co., p. 503.
    [1] Withdrawal of answer is a waiver of defects and confession of cause of action. Winfried v. Yates, Dal., 363; Cartwright v. Roff, 1 T., 78; Burton v. Lawrence, 4 T., 373; Prewitt v. Perry, 6 T., 260; Grier v. Powell, 14 T., 320; Story v. Nichols, 22 T., 87; Gilder v. McIntyre, 29 T., 89; Goodlett v. Stamps, 29 T., 121; Janson v. Bank, 48 T., 599; Etter v. Dignowitty, 77 T., 212; Graves v. Cameron, 77 T., 273; Wheeler v. Roberts, 2 App. C., sec. 129. Withdrawal of answer after demurrer is overruled does not amount to a confession. Frazier v. Todd, 4 T., 461; Janson v. Bank, 48 T., 599. The judg-

in this cause, it will be necessary to dispose of a preliminary question with regard to a mass of evidence which is embraced in the record, but objected to by counsel as not coming up in such manner and form as to entitle it to the consideration of this court. The testimony appearing in the record and objected to as being improperly contained therein, has appended to it an affidavit made in open court by one Peter McGreal, who states that he was appointed by the court below to take down the testimony in the investigation of the cause; that he believes it to be correctly taken down, and that it was read to the witnesses, who assented thereto. This affidavit is attested by the clerk. By reference to our statute law (volume 4, page 92) we find that where an appeal is taken from the district to the Supreme Court, the facts must be agreed upon by the adverse parties or their attorneys, or certified by the judge, before the rising of the court. It does not appear on the record of this cause that the testimony before alluded to has either been agreed upon by the parties, nor has it the certificate of the judge. It would be a loose and dangerous practice, even in the absence of our statute on the subject, to permit evidence to come before us which might materially affect the rights of parties litigant, upon the mere affidavit of any individual as to his appointment by the court to take down the testimony, and the correctness of that testimony, when it nowhere appears on the record that he was so appointed; but under the law there can be no doubt that we must decide from a consideration of the entire mass of evidence thus introduced.

As the determination of this court will be based on the exceptions taken by counsel below to the charge of the judge to the jury and his refusal to give other charges asked by the counsel, and the rejection of testimony offered by plaintiffs below, it is proper that the material portions of the judge's charge should be set forth, in order to determine whether such error in law exists as will entitle the plaintiffs to a reversal of the judgment. The court below refused to permit a witness to be asked whether or not he knew the plaintiffs to have been beaten, the day previous to the execution of the deed, until they *agreed to sign the same;* and also excluded testimony as to threats made by one Westall against the plaintiffs, to which opinions of the court the plaintiffs excepted. The judge then charged the jury, after some preliminary observations, as follows:

"The jury will reject *all* testimony, circumstantial, inferential, or otherwise, which does not relate to the substance, the time, and *manner* of signing and executing the deed; therefore a voluntary transfer of property for the benefit of the relations of the parties can not be affected

---

ment must conform strictly with the cause of action alleged in the pleadings. Storey v. Nichols, 22 T., 87; Janson v. Bank, 48 T., 599; Etter v. Dignowitty, 77 T., 212; Wheeler v. Roberts, 2 App. C., sec. 129. Judgment nihil dicit partakes of nature of judgment by default and by confession, and is construed liberally in plaintiff's favor. Cartwright v. Roff, 1 T., 78; Burton v. Lawrence, 4 T., 373; Wheeler v. Pope, 5 T., 262; Storey v. Nichols, 22 T., 87; Gilder v. McIntyre, 29 T., 89; Graves v. Cameron, 77 T., 273; **Wheeler v.** Roberts, 2 App. C., sec. 129.

by idle rumors or threats, which may have resulted from the supposed misconduct of the parties executing the trust; and which were not held up before them at the *moment* of acting, or whilst the necessary preparations were making to carry out the objects of the conveyance, with a view to compel their acquiescence from the terror of personal violence. If the plaintiffs, having been guilty of any misconduct which was calculated to call down upon them public resentment or indignation, voluntarily sought the method of a conveyance in trust for the benefit of the injured party, intending thereby to appease popular clamor, that act can not be set up in a court of justice to annul their own deed. The violence must be of such a threatening and instantaneous character as to make fear the moving, operating consideration to the deed. If the threats were made by those not present to execute them, it was easy for the persons threatened to apply to the civil authorities for protection; and it could not therefore be such a duress as would avoid the deed. It will be for the jury to determine from the facts of the case, whether these *impending circumstances* existed, taken in connection with the law. Duress is of two kinds—duress of imprisonment, where the person is confined; and duress of threats, where the act of violence is *declared,* or hanging over the party. Duress by threats is rather the fear of loss of life or limb. This fear must be well grounded; not mere conjecture or suspicion of danger, such as a timid mind might conjure up in a moment of alarm. The fear of losing one's property is no duress, because the injury may be repaired by damages; but no adequate atonement can be made for the loss of life, or limb, or liberty, or ignominious punishment." The charge asked by the plaintiffs' counsel, and refused by the judge, was, that when a party is subjected to undue influence of extreme terror or threats, or apprehensions short of duress, and executes a deed under such circumstances, it is void; also, that a deed made under circumstances of extreme necessity and distress of the party, although not accompanied by any direct restraint or duress, is void. Upon exception to the refusal to give this charge, the charge as given, and the rejection of the testimony offered, we are to determine whether the judgment should be affirmed or reversed. By referring to the charge of the judge, both in part and in whole, we find that the jury were required to confine their examination and base their determination upon facts which would prove duress at the *very time and place* of executing the deed; expressly charged to exclude all testimony, *inferential, circumstantial, or otherwise,* which did not relate to *the time, the manner, and the substance* of signing and executing the deed. This is stated in the very outset of the opinion of the judge. Immediately

---

[2] If the writ or citation is defective and the defect is discovered before defendant answers, a new writ may be awarded. If defendant answers, he waives objections to process. Raquet v. Nixon, Dal., 386; Kavanaugh v. Brown, 1 T., 481; Cartwright v. Chabert, 3 T., 261; Wood v. Smith, 11 T., 367; Yturri v. McLeod, 26 T., 84; Herndon v. Crawford, 41 T., 267; Armstrong v. Bean, 59 T., 492; Rice v. Peteet, 66 T., 568; Cahill v. Railway Co., 76 T., 100.

afterwards he states, "that no idle rumors of threats, which were no held up before the parties at the *moment of acting,* or whilst the necessary preparations were making to carry out the objects of the conveyance, with a view to compel their acquiescence, should be regarded by the jury." In fact, throughout the whole charge the same expressions, variously modified, but all tending to the same end as stated above, are repeated and enforced by the court. By an examination of the law guarding the decisions of courts on questions of this kind, we find that relief is afforded by the courts in a much more extensive class of cases than that embraced under the common law definition of duress, as given by the judge in his charge to the jury.

In 1 Story on Equity, page 243, the very words embraced in the charge asked by the plaintiffs' counsel and rejected in the court below are found; and the authorities there referred to fully sustain the doctrine. Nowhere do we find that the threats of violence, which are the inducement to a particular act, must be made at the very *time and place* of the execution of that act. The fear must exist at the time of the execution of a deed, but the threats and circumstances inducing that execution need not be present, but may be proved at any antecedent time; and it is for the jury to say, when those threats and circumstances are proven, whether they are sufficient to induce such fear as might move a man of ordinary firmness to the execution of the deed. But when we take in connection with the charge of the judge, confining and restricting the investigation of the jury, both by limited terms of the law and to a still more limited application of the facts, the refusal on the part of the court to admit the testimony shown to have been offered in the trial below, which testimony was at once legitimate and must, if answered in the affirmative, have had a direct and powerful influence on the minds of the jury, there can remain but little doubt that manifest injustice would be done by sustaining the judgment rendered below. The charge alone might not have been sufficient to reverse; but coupled with the rejection of testimony which was directly to the issue, a due regard for the rights of parties and for the laws, which must govern our decisions, requires a reversal of the judgment. From the meager statement of facts found in the record we can not proceed here to give such a judgment as should have been rendered in the court below. The cause will therefore be remanded for a new trial, and all the costs of the case will await the final decision of the cause.

*Remanded.*

---

[3] Errors not objected to in trial court can not be raised on appeal. Edwards v. Peoples, Dal., 359; Mann v. Thruston, Dal., 370; Bailey v. Hardy, Dal., 376; Darly v. Chevallier, Dal., 555; Hansborough v. Towns, 1 T., 58; Crosby v. Houston, 1 T., 203; Burton v. Anderson, 1 T., 93; O'Conner v. Towns, 1 T., 107; Jones v. Black, 1 T., 527; Cloud v. Smith, 1 T., 611; Swenson v. Walker, 3 T., 93, 110; Hopkins v. Donaho, 4 T., 336; Coles v. Perry, 7 T., 109; Davenport v. Lackie, 8 T., 351; Pierson v. Burney, 15 T., 272; Shelby v. Burtis, 18 T., 644; Bullock v. Hayter, 24 T., 9; Robinson v. Mattison, 25 T. Supp., 451; Elliot v. Mitchell, 28 T., 105; Allen v. Traylor, 31 T., 124; Andrews v. Jones, 36 T., 149; Hughes v. Roper, 42 T., 116; Carter v. Eames, 44 T., 544; Johnson v. Blunt, 48 T., 38; Ragsdale v. Robinson, 48 T., 379; Life Ins. Co. v.

## No. XXXII.

### Daniel McKinney v. Peters and Lewis.

(See Note 59.)

*Appeal from Bowie.*

OCHILTREE, JUSTICE.—Daniel McKinney filed his petition in the District Court of Bowie County, in which he alleges that on the 17th day of June, 1840, John S. Peters and Charles Lewis, the latter by the name and description of Chas. Lewis, for value received, acknowledged themselves indebted to your petitioner in the sum of $296.31, and in consideration thereof executed at the same time their promissory note, whereby they jointly promised to pay your petitioner said sum one day after date thereof aforesaid; yet though often requested, etc. We presume that the order of pleadings in the case is not correctly stated in the transcript sent up, as the record represents the defendant as pleading first the general issue and then demurring to the petition. The demurrer was overruled and a jury impaneled, when a note described as follows was attempted to be offered by the plaintiff in evidence.

"$296.31-100. One day after date, we promise to pay Daniel McKinney, guardian of the heirs of William Collum, deceased, two hundred ninety-six 31-100 dollars, value received of him this 17th June, 1840. (Signed) John S. Peters, Exr. of Samuel Peters, deceased. Charles Lewis."

Which note the court refused to permit to go to the jury, to which opinion of the court the plaintiff excepted. The verdict of the jury was for the defendant; judgment accordingly. Why the court below refused to let the note go to the jury we are not informed by anything contained in the statement of facts. From the arguments and briefs of counsel submitted, we are led to the conclusion that the court below are of opinion that there was a variance between the note described in the petition of the plaintiff and that offered as evidence. If it was because the petition did not set out the description of Peters, one of the payees, we are of opinion that he erred. There is no better settled doctrine than that an executor or administrator can not contract a debt to bind his intestate's estate. This being admitted, the fact that he thought proper to add, as an appendage to his name, executor of Samuel Peters, deceased, imposed no obligation on the plaintiff so to describe

Ray, 50 T., 511; Urquhart v. Womack, 53 T., 516; Brooke v. Clark, 57 T., 105; Caruth v. Grigsby, 57 T., 259; Farley v. Deslonde, 58 T., 588; Long v. Garnett, 59 T., 229; Langton v. Marshall, 59 T., 269; Flanagan v. Pearson, 61 T., 302; Gaines v. Nat. Exchange Bank, 64 T., 18; Ford v. Cowen, 64 T., 129; Blum v. Golden, 66 T., 621; Cannon v. Cannon, 66 T., 682; Tevis v. French, 71 T., 59; Ellis v. Garvey, 76 T., 371; Shornick v. Bennett, 77 T., 244; Brown v. Perez, 79 T., 157; Cason v. Conner, 83 T., 26; Hanrick v. Curley, 93 T., 458; Lytle v. Custead, 4 T. C. A., 490; Baker v. Collins, 4 T. C. A., 520; Spencer v. James, 10 T. C. A., 327; Eastham v. Sims, 11 T. C. A., 133; Prestage v. Loving, 1 App. C., sec. 707; Adams v. Duggan, 1 App. C., sec. 1268; Sears v. Green, 1 U. C., 734.

him in his petition. It might have been because the descriptio personae of the payee was omitted in the petition. We do not believe that it was necessary that the petitioner should have averred it, to enable him to offer a note which corresponded in all other material requisites with the indebtedness set forth. On a note made payable to an administrator, he may sue in his own name. Bayley on Bills, 335. So on a note payable to anyone in a fiduciary character, the payee need not sue in that character, but may maintain an action in his own name. We are of opinion, therefore, from all that we can glean from the record, that the court below erred in refusing to allow the note to be offered as evidence. It is therefore ordered, adjudged and decreed by the Supreme Court of the Republic of Texas, that the judgment of the court below be reversed, and that the plaintiff Daniel McKinney do recover of the defendants, John S. Peters and Charles Lewis, the sum of $296.31, principal, and $71 interest, together with all his cost in this behalf expended, together with 10 per cent damages for delay, and that execution issue therefor.

*Reversed and rendered.*

Concurred in by Chief Justice John Hemphill and Judge R. E. B. Baylor.

Judge P. C. Jack says: "I am compelled to dissent from the above opinion. I do not think the note offered in evidence was described in the petition. The judgment in this case, it seems to me, would be no bar to an action brought on the same note, by the plaintiff as guardian."

## No. XXXIII.

### JOHN DURST v. JOSEPH F. LEWIS.

*Appeal from Nacogdoches County.*

HEMPHILL, CHIEF JUSTICE.—In this case the appellant, or plaintiff in error, was trustee for both parties to the record, and had no such interest in the matter in controversy as would authorize him to represent the rights of one in opposition to the claims of the other party. The parties are not properly before the court, and no case is presented for the exercise of appellate jurisdiction. Under such circumstances it would be superfluous to examine into the errors assigned by the plaintiff, as it would not be competent for this tribunal to afford relief against them, if any there might be. It is therefore ordered by the court here, that the writ of error be quashed and the case dismissed.

*Dismissed.*

---

Note 47.—Bradley v. McCrabb, p. 504.

[1] Person elected to fill a vacancy in an office is entitled to hold it for the statutory period, and not the unexpired term. Bradley v. McCrabb, Dal., 504; Roman v. Moody, Dal., 512; Shelby v. Johnson, Dal., 597; Banton v. Wilson, 4 T., 400. Distinguished in Royston v. Griffin, 42 T., 566.

## No. XXXIV.

### SAMUEL SHARPE v. THE REPUBLIC OF TEXAS.

*Appeal from Jackson County.*

OCHILTREE, JUSTICE.—Samuel Sharpe, having proved before the board of land commissioners of Jackson County that he was a resident citizen at the date of the declaration of independence, a single man, and had actually engaged in the service of his country pending the revolution, having been present at the taking of San Antonio and at the battle of San Jacinto, was allowed a certificate for one-third of a league of land. Subsequently and within the time prescribed by law he married, and thereby became entitled to an augmentation of two-thirds of a league and one labor of land. The woman whom he had married had arrived in this Republic after the 1st day of January, 1837, and was the head of a family; and in her own right, anterior to her marriage with Sharpe, received a certificate under the twenty-fourth section of the land law for 1280 acres of land. When Sharpe after his marriage applied to the board for his augmentation, they insisted on deducting from the two-thirds of a league and labor to which he was entitled, the quantity of land for which his wife had, previously to marriage, received her certificate. From this decision the plaintiff appealed to the district court, where, strange to say, the judgment of the commissioners was not only reversed, but Sharpe was decreed to recover nothing by his suit. From this judgment the plaintiff took an appeal to this court. In this state of case, it becomes our duty to render such judgment as should have been rendered by the court below. The board of commissioners should have issued the plaintiff a certificate for the full quantum of land authorized by the twenty-third section of the land law, passed December 14, 1837, viz., two-thirds of a league and one labor. That section contains the only exceptions to the rule, viz: that its provisions should apply to those only who have contributed to the support and defense of the country; that the additional quantity shall not be allowed to any whose wife has received a league of land from the government. Neither exception applies in this case. The judgment of the court below must be set aside. It is therefore ordered, adjudged and decreed, that the plaintiff, Samuel Sharpe, recover of the Republic of Texas an augmentation of two-thirds of a league and one labor of land, and that the judgment of this court be certified to the District Court of Jackson County, and that the clerk of

---

² Quo warranto is a legal proceeding by the State to determine the right of an office or franchise, and to oust or forfeit. As a general rule, it can only be sued out in the name of the State by its prosecuting officer. It is also used to ascertain whether an individual has authority to exercise official functions. Ex parte Colin De Bland, Dal., 406; Bradley v. McCrabb, Dal., 504; Wright v. Allen, 2 T., 158; State v. S. P. Ry. Co., 24 T., 80; Grant v. Chambers, 34 T., 573; Brennan v. Weatherford, 53 T., 330; State v. De Gress, 53 T., 387; Farmer v. State, 69 T., 561; Wallace v. Anderson, 5 Wheat., 291;

said district court be ordered and directed to issue to said **Samuel Sharpe** a certificate, in due form of law, for said amount of land.

*Reversed and rendered.*

## No. XXXV.

### SCOTT AND SOLOMON V. MAYNARD ET UX.

(See Note 60.)

*Appeal from Matagorda County.*

HEMPHILL, CHIEF JUSTICE.—Maynard and wife brought this action in the court below against Scott and Solomon, to try the title to a certain lot of land in the town of Matagorda. The answer of the defendants denies the allegations of plaintiffs, and asserts title to themselves to the lot in question; filing interrogatories to be answered by the said Maynard, in relation to the consideration paid by him for certain improvements on the said lot. A conveyance of the said improvements by Scott and Solomon to Maynard is filed as an exhibit in the case; and Maynard's answers to the interrogatories are, that the consideration consisted of cash advanced, goods sold, work done and liabilities assumed; and that it has not failed. Upon an affidavit of Scott and Solomon, a change of venue was granted, by the judge in chambers, to the county of Brazoria; but the cause was never transferred. Trial being had, judgment was rendered for plaintiffs, and a writ of possession to the lot in controversy awarded. A motion for a new trial was made on the following grounds, viz: that the court instructed the jury that the only question for their inquiry was as to the title to the lot, and that they were not to inquire into the value of the improvements, and that no survey of the property was ordered by the court; no demand of possession proven by the plaintiffs; and no notice to quit given to defendants. The motion was overruled, and an appeal taken. During the progress of the cause there were three several agreements of the counsel·of both parties in relation to the title of the wife of the said Maynard to the land in dispute; by the final modification of which it was admitted that she had become the owner thereof by purchase, after her marriage with the said William J. Maynard. The petition and answers in a suit in equity, instituted by Scott and Solomon against Maynard and wife, were offered in evidence. In his answer, the said William J. Maynard admits that some time in October, 1839, he offered verbally to sell to the said Scott and Solomon the said lot for the price of $600 in cash; that they, having accepted the proposition, took possession of the same, promising from day to day the payment of the said money in

---

Territory v. Lockwood, 3 Wall., 236. An individual may make the relation on which the State's officer files the information. In such cases the proceedings are in the exclusive control of the State's officer, and can not be dismissed by the relator. Banton v. Wilson, 4 T., 400; Mathews v. State, 82 T., 577; McClesky v. State, 4 T. C. A., 322. If relator has no interest, court

pursuance of their agreement, but had hitherto failed to do so. He admits that the said Scott and Solomon had erected a building on the said lot, but states that they had disposed of the same for a valuable consideration, and that his wife, C. O. Maynard, is now sole owner and proprietor thereof. From some exhibits in the case it appears that this house was conveyed by Scott and Solomon to the said William J. Maynard and by him to one Thomas Stewart, and from the said Thomas Stewart to the wife of the said Maynard. A. C. Horton testifies, that Maynard admitted to him that he had sold the lot of ground to the appellants for $600, to be paid in sixty days. Maynard also stated that Scott and Solomon had made him a deed for the improvements, to secure him as their indorser. The value of the improvements he would estimate at four or five thousand dollars, at the time they were made. John W. McCamly testified that Maynard made similar admissions to him as to the sale of the lot, and that he had received the money. Witness thought that he had received property sufficient to satisfy him.

This cause was heard at the previous session of the Supreme Court. The arguments of counsel were then principally directed to the grounds urged in the motion for a new trial. To these points we will now first advert. The statute under which this action was brought was passed to prevent the complicated and fictitious proceedings of the action of ejectment, as known to the law, simplifying its form and modifying in some degree its action and effects. In the eighth section of that act it is provided, that on a suggestion of a defendant in possession of lands that he and those persons under whom he claims have had adverse possession of the land in controversy for at least one year previous to the commencement of the suit, etc., that the jury shall inquire into the truth of the suggestion, ascertain the value of the improvements, if any have been made, and give such judgment either for or against the defendant as the comparative value of the improvements and the damages sustained by the detention, use and occupation may require at their hands. The third section provides, that a survey shall be ordered by the judge of the land, in chambers or in court, or upon motion of either party, for the better finding out and discovering the truth of the matter in controversy. There was no error in the court below in overruling the points here made. As to the first, no suggestion as required by law was filed; and though the value of the improvements was proven, still no inquiry could be made by the jury, since there was no allegation in the answer under which the proof could be introduced, and any evidence therefore on that point was extrinsic to the issue. The provision with

---

may refuse to allow the information to be filed, or dismiss it. Deaver v. State, 27 T. C. A., 453. Can not be used as a remedy by a stockholder of a corporation. State v. R. G. Ry. Co., 41 T., 217. Quo warranto is a proper proceeding to try title to an office, but it has always been regarded by our courts as only a cumulative remedy. Bradley v. McCrabb, Dal., 504; Wright v. Allen, 2 T., 158; State v. Cocke, 54 T., 482; Flatan v. State, 56 T., 93; Watts v. State, 61 T., 184; State v. Jennett, 63 T., 261; McAllen v. Rhodes, 65 T., 348; Fowler v. State, 68 T., 30; Williams v. State, 69 T., 368; Livingston v. State, 70 T., 393; State v. De Gress, 72 T., 242; Hunnicutt v. State, 75 T., 233. The term "franchise" used in Act of July 9, 1879 (Gammel's Laws of Texas, vol.

regard to the survey is merely directory where there is doubt, though a matter of right when required on motion; and since no motion was made for the survey, and no difficulty arose as to the proper designation and identification of the land, the petition and answer concur in their descriptions of the lot in dispute. There being, then, no necessity for the survey, there was no error in proceeding to trial without an order for the same. Equally unsound are the other reasons alleged in the motion. Demand of possession and notice to quit are necessary when the parties occupy the relative position of landlord and tenant. But the defendants claim the lot in controversy as their absolute property. The important questions which still present themselves, from an inspection of the record, are in relation to the interest or estate which the wife has to the land in contest; the husband's power of disposing or selling of the same; and whether the sale, being made verbally, was valid and binding in law.

The alleged sale of the lot in question from Maynard to Scott and Solomon, having been made in 1839, before the introduction of the common law, the rights of the parties are regulated and must be determined by the system of laws prevailing in this Republic at the period of the transaction. As tested, then, by these laws, did the purchase by Mrs. Maynard of this property after her marriage vest in her any estate or interest separate and apart from that of her husband; or did it immediately become a portion of the community of "acquits," or gains? By reference to White's Recopilacion, we find that ganancial property is all that which is increased or multiplied during marriage; by multiplied, being understood all that which is increased by onerous cause, or title; and not by a heratine one, as inheritance or donation; that property is supposed to be common, except when proved to be separate or distinct; that what the husband or wife bring into marriage as their own peculiar property, or acquire during it by lucrative cause or title, does not come into partition; but that property acquired during marriage by purchase, sale, or other onerous cause or title, does. 1 White's Recopilacion, p. 61. Having no access to the works of Febrero, we are compelled to glean such extracts from that author, applicable to this subject, as may be found on examining the Reports of Louisiana. In Davenat v. Le Bocton, 1 La., 520, it was decided that by the Spanish laws everything purchased during the marriage fell into the common stock of gains, and at the death of either of the parties was to be divided equally between the survivor and the heirs of the deceased; and this

9, p. 75), Rev. Stats. 1895, art. 4347, regulating quo warranto proceedings, applies only to franchises of corporations. State v. Smith, 55 T., 447; I. & G. N. Ry. Co. v. State, 75 T., 356. County and district attorneys can not institute quo warranto proceedings to forfeit charter of corporation. Rev. Stats. 1895, art. 4343, in so far as it attempts to confer such power, is unconstitutional. Such proceedings must be brought by the Attorney-General. Constitution, art. 4, sec. 22; State v. Paris Ry. Co., 55 T., 76; State v. Moore, 57 T., 307; State v. I. & G. N. Ry. Co., 89 T., 562; also see State v. S. P. Ry. Co., 24 T., 80; State v. R. G. Ry. Co., 41 T., 217. A contrary rule seems to be held in Morris v. State, 62 T., 728, but is distinguishable from the other cases, in that the suit was to oust from use of a franchise not authorized by

effect was produced whether the purchases were made with the money or capital of the community, or with that of either of the married parties; whether in the name of both, or that of one of them separately. See Feb. add. part 2, lib. chap. 4, sec. 1, No. 6. In the Novissima Recopilacion (lib. 10, title 4, sec. 1), we find a law expressed in the following terms: "'Toda cosa que el marido y muger ganaren a compraon estando de consuno hay aulo ambos por medio," etc. [Everything which the husband or wife shall acquire or purchase while together shall be equally divided between them, etc.] From an examination of the above authorities, we are justified in concluding that under the Spanish laws property acquired during marriage by purchase, whether the acquisition be made in the joint names of husband and wife or of either of them separately, must be considered as common property, and that if there be any exception to this general rule, it must be established by certain and positive evidence, or otherwise the presumption that the property is common will remain in all its force unimpaired. It appearing, then, by the testimony that Mrs. Maynard acquired the lot in dispute by purchase after marriage, the same was thrown into the common stock of gains, and by operation of law was impressed with all the incidents appertaining to ganancial property.

We proceed to consider the husband's power of disposing or selling the same. In Sala, lib. 1, title 4, sec. 20, it is clearly laid down that, during the continuance of the marriage the *actual* dominion over the community property is vested in the husband, and that therefore he can sell the common property without the consent of the wife; and that such disposition is valid, except when made for the purpose of defrauding or prejudicing the wife. See also, 1 White's Recop., p. 63, with the notes from Palacios. Maynard, then, having the administration of the ganancial property, and the power of disposing thereof without the consent of his wife, his alienations of the same, when not vitiated by the exception above mentioned, would be valid and binding in law. The question next in order is as to the validity of a verbal sale under the laws of Spain. In the 5th Partida, title 5, Law 6, it is said that sale and purchase may be affected in two ways, etc. "One of the modes is without writing; when the seller and buyer have mutually agreed upon the price; the one being pleased with the price and the other the thing, without mentioning any writing. We say that a sale thus made would be perfect, although no earnest had been given by the buyer to the seller; as they would be both bound for the fulfillment of the contract they had made." In Gonzales v. Sanches and Wife, 10 N. S., 67, and in Ducrest's Heirs v. Bijeau's Estate, it was decided that, by the Spanish

---

law—may be filed by district attorney pro tem. Fowler v. State, 68 T., 30; Davis v. State, 75 T., 420; Little v. State, 75 T., 616; Bell v. Faulkner, 84 T., 187, 189; Dean v. State, 88 T., 290; State v. Thompson, 10 T. C. A., 272; Hanscom v. State, 10 T. C. A., 638; Hussey v. Heim, 17 T. C. A., 153; Gray v. State, 19 T. C. A., 521; Quintanilla v. State, 23 T. C. A., 479. Though the State may appeal without bond, the costs should be taxed against the relator, not the State. Hussey v. Heim, 17 T. C. A., 153; State v. Broach (T. C. A.), U. R. C., 1896. It does not lie when there is no question as to the right to the

laws, parol evidence was admissible to establish the alienation or acqui-
sition of immovable property; and in Sackett v. Hooper, 3 La., 104,
the same doctrine was expressed in substance, though in the latter case,
possession on the part of the vendee was maintained as a necessary in-
cident to the validity of the sale.   From an examination of the above
law and authorities, we are of opinion that a verbal sale of lands, accom-
panied by possession on the part of the vendee, was valid under the laws
in force at the time of making the contract (in this Republic).   From
the record, we think there was sufficient evidence that a verbal sale was
made by the said Maynard to the appellants.   His answer to the suit
in equity partially admits the fact, and also of possession taken by the
vendees.   Two witnesses testify to his admissions of having sold the lot
for $600; one of them says, to be paid in sixty days; and the other, that
Maynard admitted the receipt of the money.   The fact of the sale (which
was valid in law) being thus established by evidence, the finding of the
jury in favor of the plaintiffs in the court below was clearly erroneous.
Before awarding final judgment, the court will take occasion to express
its sense of the important assistance afforded them by the able and zealous
efforts of the gentlemen of the bar, when their investigations are directed
to the system of laws by which the matters in controversy must be de-
cided.   But when their arguments are based on some other system, which,
however admirable for its justice or exalted for its wisdom, can exer-
cise no other authority than that derived from the force of reason, their
labors serve to perplex and confound, rather than remove the embarrass-
ments which shroud the important principles involved in the contro-
versy.   The court appreciate the difficulty arising from the scarcity
of books or authorities on questions arising under the former laws of
the country.   But it is clearly the duty of the attorneys to exhaust all
which may be accessible to them before they turn for assistance to the
common or any other system of law.   Throughout the progress of this
cause in the court below, as well as before this tribunal, there has been
a strange compound of error, and a mixture of the different systems of
jurisprudence, springing originally from the belief that the lot sold
was the separate property of the wife.   The errors which appear in the
charge of the court below originate from this mistake; and from the
conduct of the argument in this court, it is manifest that the principles
of law which governed the case were not discussed before the district
court; and from this circumstance the judge was misled to charge on
principles of law which were not applicable to the case.   Having ma-
turely considered the matters presented on the record for our decision,

office, to question right of officer to do an act or restrain him from exercising
a privilege incident to his office.   State v. Smith, 55 T., 447.   Nor to oust an
officer for bribery until conviction.   State v. Humphries, 74 T., 466.   Nor to
revise decision of city council as to eligibility of candidate for municipal
office.   Seay v. Hunt, 55 T., 545; Krakauer v. Kaples, 5 T. C. A., 264.   Nor
by public weigher against a private weigher.   Watts v. State, 61 T., 184.
It does not lie to forfeit fronchise, except for causes declared by statute.
State v. R. G. Ry. Co., 41 T., 217; Morris & Cummings v. State, 65 T., 53.
It lies against the enjoyment of a franchise granted either by State or muni-
cipal legislation, when the power to grant did not exist; and the legality of

we are of opinion that the judgment of the court below was erroneous and should be reversed; and it is therefore and hereby ordered, adjudged and decreed, that the judgment of the court below be reversed, and that the appellees pay the costs of suit.

*Reversed.*

## No. XXXVI.

### JOHN W. MOORE, SHERIFF, v. JOHN D. MOORE.

*Appeal from Harris County.*

JACK, JUSTICE.—This case comes up by appeal from Harris County. John D. Moore, who was the plaintiff below, by his counsel, moved against John W. Moore, who was sheriff of Harris County, for failing to return an execution, which the said John D. Moore had against one Pilie. There was judgment for plaintiff on his motion, against the sheriff as principal, and against George Stephens, B. Carraher, A. Larson, Charles Bowman and R. Walker, his securities; and defendants appealed. We can not find in any part of the record in this case that John W. Moore either had notice of the motion against him or of his appearing and contesting it. By an act passed May 24, 1838, a summary remedy is granted against sheriffs in certain cases; provided that three days notice of such motion be given to such sheriff. This is an extraordinary remedy and must be strictly pursued by those who wish to avail themselves of its provisions. In no part of the act are the securities mentioned, and we think it never was intended to mean more than that the sheriff alone and not his securities could be reached by motion.

We think there was error in the court below; first, because it does not appear from the record that the defendant below had the notice which the statute requires; and secondly, even if the securities could be reached by such motion, they were not included in the motion. It was against the sheriff alone; and the judgment was manifestly erroneous, so far as their rights were affected.

Let the judgment of the district court be avoided and reversed, and the cause remanded.

*Reversed and remanded.*

---

the corporation may be called in question by quo warranto in an action involving the right of an officer to do an act under the charter. Morris & Cummings v. State, 62 T., 728; State v. Goowin, 69 T., 55; Furrh v. State, 6 T. C. A., 221. It lies to test validity of a municipal or quasi municipal incorporation. State v. Dunson, 71 T., 65; East Dallas v. State, 73 T., 370; State v. Eidson, 76 T., 302; Ewing v. State, 81 T., 172; Mathews v. State, 82 T., 577; State v. Wofford, 90 T., 514. In such cases laches can not be imputed to the State. State v. Wofford, 90 T., 514; Troutman v. McClesky, 7 T. C. A., 561. It is not a means to compel a person or corporation to carry out contracts. It is used to forfeit, not to suspend a franchise; to reclaim a privilege, not to punish for breach of contract. Morris & Cummings v. Schooner Leona, 67 T., 303. Though quo warranto is in form analogous to a criminal prosecution, the remedy is civil in nature. State v. Degress, 53 T., 387; Davis v. State, 75 T., 420; Buckler v. Turberville, 17 T. C. A., 120; Ames v. Kansas, 111 U. S., 449; Foster v. Kansas, 112 U. S., 201.

## No. XXXVII.

### NANCY WILLIAMS v. GEORGE HUFF.

*Appeal from Matagorda.*

HEMPHILL, CHIEF JUSTICE.—In this case a writ of injunction was ordered to issue, on the plaintiff's bond and security required by law. Some informal proceedings followed and a judgment was finally awarded, ordering defendant to pay the costs of suit; but no bond appears on the record and consequently there is no evidence that any was given as required by law and the order of court. The want of the bond, we think a fatal defect, vitiating all the proceedings subsequent to the order that a writ of injunction should issue. It is therefore ordered, adjudged and decreed that all proceedings, subsequent to the order of the court commanding the writ of injunction to issue be reversed and set aside, and that the cause be remanded to the district court for further action.

*Reversed and remanded.*

## No. XXXVIII.

### JAS. W. AND S. W. SIMMS v. JOHN PRICE.

(See Note 61.)

*Appeal from Red River County.*

OCHILTREE, JUSTICE.—This cause should be reversed and remanded for a new trial, because the verdict of the jury is irresponsive to the evidence. That part of the finding of the jury, based on the only evidence offered, was very properly for the defendant. The jury arrogate to themselves the right, however, to go farther, and to determine the rights of the parties according to their own notions of what had taken place between them. The province of a jury is to determine a case upon the facts as proven, connected with the law as given them in charge by the court. They should never let their own impressions, derived from knowledge of circumstances on their own part, or impressions received from others not introduced as witnesses, sway their minds or enter into their verdict.

*Reversed and remanded.*

---

**Note 48.**—Roman v. Moody, p. 512.

Person elected to fill a vacancy in an office is entitled to hold it for the statutory period, and not the unexpired term. Bradley v. McCrabb, Dal., 504; Roman v. Moody, Dal., 512; Shelby v. Johnson, Dal., 597; Banton v. Wilson, 4 T., 400. Distinguished in Royston v. Griffin, 42 T., 566.

**Note 49.**—Taylor v. Duncan, p. 514.

[1] Appeal will be dismissed if transcript is not sent up within the time prescribed by law unless satisfactory excuse be shown. Lockhart v. Lockhart, 1 T., 199, 201; Hicks v. Harlan, 1 T., 560; State v. Kroner, 2 T., 492; Keese v. Swift, 3 T., 111; Urbane v. Johnson, 3 T., 191; Reynolds v. De-

# JUNE TERM, 1844.

### No. 1.

#### RAYMOND DARLY v. CHAS. CHEVALLIER.

##### (See Note 62.)

*Appeal from San Augustine.*

BAYLOR, JUSTICE.—Two points present themselves for our consideration in this case, which are alleged as grounds of error for a reversal of the judgment below.

1. That the note sued was payable on the contingency of the return of the payee from San Antonio, and that it was not proven on the trial that he had ever returned.

2. That it is not alleged and proven that the claim had ever been presented to the appellant, as administrator of the payor.

In regard to the first point it will be sufficient to say that the note bears a credit of $100, which, added to length of time which had elapsed between the making of the note and the commencement of the suit, was sufficient to raise the presumption that the contingency had happened.

The second point is of more consequence. This court has decided, that under out statute it is necessary to allege and prove that the claim had been presented to the administrator and refused by him, and that this court would reverse judgments in the courts below, where such allegation and proof was wanting. See Cummings, Administrator, v. Jones. This case at bar was commenced before the passage of our statute, and although its provisions are similar to those of Louisiana, yet we feel bound to conform to the Louisiana decisions in cases arising before our statute. In Louisiana it is necessary to present claims to an administrator before suing on them; but unless advantage is taken in the court below of such nonpresentation, the appellate tribunal will not notice the defect. In the case at bar no objection was taken in the court below to the want of an allegation of the presentation and refusal of the claim, and this court will not now set aside the judgment for that reason. This decision is not to be understood as overruling the case of Cummings v. Jones, and the decision in that case will be adhered to.

Let the judgment of the court below be affirmed with costs.

*Affirmed.*

---

chaumes, 22 T., 116; Hall v. Claiborne, 27 T., 217; House v. Bennett, 40 T., 346; Wilson v. Adams, 50 T., 5, 13; Warren v. Wooters, 52 T., 568; Mills v. Paul, 1 T. C. A., 419. Where right of appeal is lost by lapse of time it can not be revived by statute subsequently passed. Lockhart v. Lockhart, 1 T., 199, 201; First Nat. Bank v. Preston Nat. Bank, 85 T., 560; First Nat. Bank v. Preston Nat. Bank, 3 T. C. A., 545.

[2] Retrospective laws prohibited by Constitution are such as give rights or impair vested rights, by relation back. Sutherland v. De Leon, 1 T., 250; De Cordova v. Galveston, 4 T., 470; Paschal v. Perez, 7 T., 348; Hamilton v.

## No. II.

### ANDREW BRISCOE v. CORRI AND WIFE ET AL.

*Appeal from Harrisburg County.*

BAYLOR, JUSTICE.—The appellant, Briscoe, commenced his suit in the court below against Henry Corri (who had intermarried with Eliza Hight, widow of William Pope) and one David Y. Portis, for the recovery of a certain negro man slave commonly called Henry; and for the sum of $1000, alleged to be due for the hire of said slave. Briscoe avers in his petition, that on the 20th of March, 1839, he purchased of the said Eliza for the consideration of $800, to her in hand paid, the slave in question; that she warranted him to be sound in body and mind; free from incumbrance as to title, and a slave for life; "to have and to hold the said slave, his profits and labor to him, the said Briscoe, his heirs and assigns forever; on condition, however, for the purposes named in their written contract, to wit, that the said Eliza should keep the possession of the said slave in the city of Houston for one month, and at the expiration of that time she should, on the payment of $100, have the privilege of keeping the said slave one other month; after which time she was to keep the said slave, so long as she wished, on the month's payment in advance of the sum of $200, with the further trust, that on the payment of the said hire, punctually in advance one month, the said Eliza had the privilege of purchasing the said slave for the sum of $900; all of which would fully appear by the bill of sale and the trust therein contained, marked (A), and prayed to be made a part of his petition."

Briscoe further alleged that the said Eliza had not complied with any of the trusts mentioned in said instrument of writing, except the payment of the first and second month's hire; that she had entirely failed to comply with any or either of the other trusts in said writing named, and that she had thereby forfeited and forever lost the privilege of either keeping said slave, or of repurchasing him at the price agreed on between the parties. The petition further alleges that the said Eliza, confederating with others, had the said slave in possession; and that the other defendant, Portis, in some way or other had connected himself with the transaction so as to have the actual control of said slave. The petition concluded with the usual prayer, that defendants be compelled to deliver up said slave to the said Briscoe, and that the defendants' title to the same be vested in him, and that the hire be paid, etc.

---

Flinn, 21 T., 713; Sherwood v. Fleming, 25 T. Supp., 408; Bender v. Crawford, 33 T., 745; Moore v. Letchford, 35 T., 185; Chalk v. Darden, 47 T., 438; White v. Martin, 66 T., 340; Mellinger v. Houston, 68 T., 37; Maynard v. Freeman (T. C. A.), U. R. C., 1900; Calder v. Bull, 3 Dal., 386; Cummings v. Missouri, 4 Wall., 277; Campbell v. Holt, 115 U. S., 630. Providing a remedy for existing rights, or changing remedy, is not a retrospective law prohibited. Hall v. Allcorn, Dal., 433; De Cordova v. Galveston, 4 T., 470; Paschal v. Perez, 7 T., 343; Treasurer v. Wygall, 46 T., 447; Worsham v. Stevens, 66 T., 89; Parker v. Buckner, 67 T., 20; Odom v. Garner, 86 T., 374; Association v. New-

To this petition at the spring term of the district court in the year 1840, the defendants filed the following plea:

"In this case, David Y. Portis, Henry Corri and Eliza Corri by attorney, come and defend the wrong and injury, etc., and for answer say, that the negro boy mentioned in plaintiff's petition was delivered up to him, D. Y. Portis, in part satisfaction of a certain mortgage, which he had and held as attorney, for F. Soissons, of the city of New Orleans, against the said Eliza Corri; and that at the time of the delivery, the said negro was in possession of said Corri; and for further answer denies all and singular the allegations in plaintiff's petition and pleads payment of the debt. D. Y. Portis, for himself; Megginson & Thruston, for H. Corri and E. Corri."

On the trial of the cause in the court below, there was a verdict and judgment in favor of the defendants for the sum of $223.50, and that the title of the slave sued for was in the defendants. From which judgment Briscoe appealed, and seeks to reverse it here on two grounds:

1. The court below erred in considering the bill of sale a mortgage, instead of a conditional sale, with the privilege of repurchase on the part of Eliza Corri.

2. Under the pleadings in this case, it was error to render a judgment against the appellant, if the facts would otherwise justify it; as there was no plea of reconvention or offset.

In considering the first assignment of errors, we find upon looking into the record that the court below considered the bill of sale for the slave a mortgage, and permitted the defendants to show by verbal proof the consideration which Briscoe paid for the slave, and to show also by proof how the mutual account stood between the parties. Without deciding whether the bill of sale in this instance is a mortgage or conditional sale with the privilege to repurchase, we think that the written contract bears strong marks upon its face of hardship and oppression. This circumstance, together with the fact that the slave remained in the possession of the vendor, might perhaps, upon a proper state of the pleadings, have authorized the judge below to have concluded that the bill of sale was a mortgage and not a conditional sale. But it is unnecessary to decide this point, as we consider the second assignment of errors fatal to the cause.

In the second assignment of errors we think the objection is well taken. Under the plea of the defendants the jury were not authorized to find a balance in favor of them, there being no plea of set-off claiming such indebtedness on the part of Briscoe to the defendants. As the

man, 86 T., 380; Fristoe v. Blum, 92 T., 76; Standifer v. Wilson, 93 T., 232; Capps v. Carvey (T. C. A.), U. R. C., 1897; Maynard v. Freeman (T. C. A.), U. R. C., 1900. Statutes are never construed to operate retrospectively unless their plain language requires it. Taylor v. Duncan, Dal., 514; Linn v. Scott, 3 T., 67; Martin v. State, 24 T., 61; Orr v. Rhine, 45 T., 345; Insurance Co. v. Ray, 50 T., 511; Grigsby v. Peak, 57 T., 142; Johnson v. Taylor, 60 T., 360; Mellinger v. Houston, 68 T., 37; Rockwall Co. v. Kaufman Co., 69 T., 172; McGregor v. Goldammer, 2 U. C., 49; Murray v. Gibson, 15 How., 421; Harvey v. Tyler, 2 Wall., 329; Chewheong v. United States, 112 U. S., 536; Shreveport v. Cole, 129 U. S., 36.

plaintiff below could not recover more than the sum claimed by him to be due in his petition, neither could the defendants have a judgment in their favor for a greater sum than they claimed by their plea. This rule is essential to every cause to prevent surprise; and in order that the parties litigant may know what the matters really are in dispute between them. The judgment therefore of the court below must be reversed, the cause remanded, and a new trial awarded, with leave for the parties to amend their pleadings, in order that the case may be disposed of upon its true merits. .

*Reversed and remanded.*

## No. III.

### WILLIAM B. HAWKINS v. ELIJAH STEVENSON.

*Appeal from Bowie County.*

JONES (WILLIAM J.), JUSTICE.—This was a suit instituted in the District Court of Bowie County by the appellee against the appellant, on a promissory note with a seal attached, payable to the appellee and not negotiable on its face. The appellant, defendant in the court below, plead the general issue, and a verdict and judgment were rendered against him. At the trial term of the cause, the note had been lost and parol testimony was admitted to prove its loss and its original existence. A motion was made to set aside the verdict and grant a new trial on a number of grounds, only one which it is necessary to consider at present, the others being frivolous, except the fourth, which is as follows: "That oral testimony can not be received, as was the fact in this case, to prove the existence of a bond or note under seal, when it is possible that the said bond or note may hereafter be produced."

It has also been assigned, as additional grounds, upon which the judgment of the district court ought to be reversed:

1. That the original existence of the instrument declared upon was not established by the testimony as it is sent up to this court in the statement of facts.

2. That the name of the party plaintiff in the court below was not stated in the petition, as required by the statute.

Let us examine these three grounds in the order in which they are stated. 1. There is no principle of law better settled than that oral testimony is admissible to prove the loss of bonds or notes, and when the fact of loss is satisfactorily established, to prove by the same description of evidence the original existence and contents of the instrument. The

---

**Note 50.**—Denison v. Ingram, p. 519.

A decree probating a will is not subject to collateral attack and is conclusive as to all persons, until set aside. Paschal v. Acklin, 27 T., 173; Lewis v. Ames, 44 T., 319; March v. Huyter, 50 T., 243; Whitman v. Haywood. 77 T., 557; Box v. Lawrence, 14 T., 545. A will which has been probated in another State is not open to contest. Poole v. Jackson, 66 T., 380.

legal demand of the payee or bona fide holder is not extinguished by the destruction or loss of the written evidence of his claim; but upon proper proof of its original existence and loss, or destruction, he will be entitled to a recovery. There is some distinction drawn in the authorities, by which the rule is made more rigorous, in relation to negotiable instruments merely lost and not destroyed before falling due, where the maker or acceptor might run the hazard of being compelled to pay the debt again in case the lost instrument should be discovered in the hands of a bona fide holder for a valuable consideration. In such cases it may be necessary to go into a court of equity to obtain a recovery by a tender of proper indemnity. But the general principle is well settled. McNair v. Gilbert, 3 Wend., 344; Wamsly v. Child, 1 Vesey, 341; Long v. Baillie, 2 Camp., 214, note; Jones v. Fales, 5 Mass., 101; Renner v. Bank of Colombia, 9 Wheat., 581. In the latter case the admissibility of parol testimony was resisted, unless the *destruction* of the note had been previously made apparent; but the Supreme Court of the United States overruled the objection, saying that the rule with regard to the admission of secondary evidence is not so restricted—"if the original is *lost* by accident and no fault is imputable to the party, it is sufficient—that every case of this kind must depend in a great measure upon its own circumstances—and the rules of evidence be so applied as to promote the ends of justice and guard against fraud and imposition."

No difficulty can arise in relation to the case now under consideration. The instrument on which the suit was brought has never been transferred out of the hands of the plaintiff, who was the original payee; and being payable to him alone and not to order or to bearer, no suit could hereafter be maintained against the maker except in the name of the payee or his legal representatives. The defendant therefore runs no risk of ever being compelled to pay it over.again, as the judgment in this case could always be pleaded, in bar of any other action, into whomsoever's hands the lost note might fall, or under whatever circumstances.

As to the second ground: It is not denied that the loss of the instrument sued on was fully established; but it is insisted that its original existence was not established by the testimony as sent up to this court in the statement of facts. The loss of the note occurred after the petition was filed and before the trial of the cause; it was particularly described in the petition; it was not in the hands of the plaintiff at the time of its loss, but in those of the attorney who drew the petition; who in his testimony says that the paper lost was the one described in the petition,

---

Note 51.—Trott v. Patton, p. 522.

Interest is a creature of local law and governed by the law of the place where the contract is made. Huff v. Folger, Dal., 530; Burton v. Anderson, 1 T., 93; Andrews v. Hoxie, 5 T., 171; Davis v. Thorn, 6 T., 482; Willard v. Conduit, 10 T., 213; Bailey v. Heald, 17 T., 102 (holding that as to an indorser the place of indorsement governs); Whitlock v. Castro, 22 T., 108. Prior to Acts of January 18 and 20, 1840 (Gammel's Laws of Texas, vol. 2, pp. 177 and 182), legal rate of interest was 5 per cent. Huff v. Folger, Dal., 530; Chevallier v. Buford, 1 T., 503; Davis v. Thorn, 6 T., 482. See Rev. Stats. 1895, arts. 3097-3107.

and that it was correctly described.    Proof of the loss of an instrument, accurately described in the pleadings in court, was sufficient evidence of its original existence to justify the finding of the jury.    The existence and loss were both facts proper to be ascertained by the finding of a jury, and we do not feel warranted in reversing the judgment for want of evidence to support the verdict.    In addition to this, the defendant in the court below had pleaded nil debet before he was aware of the loss of the note sued on, and the jury were justified in drawing from that circumstance a strong inference of the original existence of the note, for it is reasonable to suppose, that if it did not exist as a genuine instrument at the commencement of the suit, the defendant would have filed the plea of non est factum and thereby put the plaintiff to the proof of its execution.

As to the third point, that the name of the plaintiff was not stated in the petition in the manner required by the statute:    This objection comes too late in this court, after the defendant having answered to the merits of the case, a verdict and judgment has been rendered against him.    It should have been taken advantage of in abatement, and at the time when the defect—if defect it be—could have been remedied by amendment on motion; and as we are satisfied that there is enough in the record to be pleaded effectually in bar of any other suit on the same instrument, we think the objection wholly untenable.    See sec. 16 of the Act to Regulate Proceedings in Civil Suits.

The only serious difficulty which has suggested itself in this case arises out of the fact that the loss of the instrument occurred after the suit was instituted upon it, and no amendment to the petition was directed by the court below, stating the loss of the note, so as to make the proof correspond to the allegations.    The authorities upon this point appear to be contradictory.    In the case of Smith v. Woodward, 4 East, 585, it was ruled, in debt upon bond, where the plaintiff declared upon the instrument, as if still in existence, and made a profert of it, he could not be permitted to prove the loss of the instrument, which occurred before the institution of his suit; and it was said by the chief justice, that if the loss had occurred after the bond had been declared upon, the plaintiff should move the court to postpone the trial and amend his pleadings to suit the circumstances.    But this case has been overruled by the Supreme Court of the United States in the case of Renner v. Bank of Colombia, already cited, in which the judge who delivered the opinion of the court says, on this point:    "It is objected lastly, that

---

**Note 52.**—Board of Land Commissioners v. Walling, p. 524.

[1] Mandamus can not be resorted to against the State without its consent. Hosner v. De Young, 1 T., 764; League v. De Young, 2 T., 497; Auditorial Board v. Arles, 15 T., 72, 75; Marshall v. Clark, 22 T., 23; H. T. Ry. Co. v. Randolph, 24 T., 317, 342; Ex parte Towles, 48 T., 413, 447; Taylor v. Hall, 71 T., 206; Thompson v. Baker, 90 T., 163.

[2] State can not be sued in her own courts without her consent, and then only in the manner indicated by special permission. Hosner v. De Young, 1 T., 764; Howard v. McSherry, 2 T., 311; League v. De Young, 2 T., 497; Bryan v. Sundberg, 5 T., 418; Marshall v. Clark, 22 T., 23; Rose v. Governor, 24 T., 496; Treasurer v. Wygall, 46 T., 447; Ex parte Towles, 48 T., 413, 447;

secondary evidence was not admissible without a special count in the declaration upon a lost note. The English practice on this subject has not been adopted in this country, as far as our knowledge of it extends, and to require a special count upon a lost note would be shutting the door against secondary evidence in all cases where the note was lost after declaration filed. We do not think any danger of fraud is to be apprehended from the admission of such evidence, under the usual count upon the note; and the practice of the court below not requiring any special count in such cases, no error was committed in the admission of the evidence."

The English decision seems to be founded upon the necessity existing there of making a profert in curia of a bond, and as the plaintiff could not show the bond upon oyer being craved, it became necessary to amend his declaration, by stating the loss of the bond, and thereby avoid the necessity of making a profert, or of bringing it into court. But in the case under consideration it was not necessary for the plaintiff in the court below to make a profert of the instrument sued on, and we therefore incline to lean on that account—as well as for other considerations unnecessary to be recited—to the American authority, and to decide that in the present case the want of such amendment of the petition is not a sufficient ground for the reversal of the judgment. Let the judgment below be in all things affirmed, with costs.

*Affirmed.*

### No. IV.

#### WARD ET AL. v. BOON.

(See Note 63.)

*Appeal from Red River County.*

OCHILTREE, JUSTICE.—Boon sued Ward, Linnecum and others in the District Court of Red River County at the spring term, 1842, in an action of trespass vi et armis, charging that the defendants had beat, bruised, and otherwise maltreated him, etc.; and laid his damages at $20,000. The parties were neither of them served to the first term of the court. At the subsequent or fall term, 1842, the writs were returned "executed" on all the defendants. Ward was served on the 25th of August, 1842. The term of the district court commenced on the first Monday in October thereafter.

At that term of the court, viz., on the 7th of October, Ward made an application for a continuance, on the ground that he had not been able to procure the attendance of his witnesses. W. Peacock, one of the witnesses, lived at the distance of sixty or sixty-five miles from the

---

Taylor v. Hall, 71 T., 206; T. M. Ry. Co. v. Jarvis, 80 T., 456; Thompson v. Baker, 90 T., 163. Statutes giving privilege to sue State are strictly construed in favor of the State, so as not to extend the privilege to those not clearly intended. Rose v. Governor, 24 T., 496. It seems that the same strictness is not required when suit is for assets of estates deposited with State.

courthouse. Afterwards, to wit, on the 14th day of October, Ward filed his supplementary affidavit, alleging the discovery on the day previous (the 13th), that one Robert Smith, a transient person, was a material witness, and praying for a continuance. The affidavit contained the usual necessary averments. Morton and Wilson at the same time filed their affidavit for a continuance, alleging that Robert Smith, a transient person, was a material witness for their defense; that they had only come to the knowledge of his materiality, etc., on that day.

The court overruled the several applications, whereupon came a jury, etc., who found the defendants guilty of the assault and battery, as charged in the plaintiff's petition, and assessed his damages at $1475 and costs of suit; upon which said verdict, the judgment of the court was entered, and the defendants gave notice of appeal. The statement of facts submitted presents also the following matter:

"During the progress of the trial in this cause, the plaintiff introduced Abner H. McKenzie as a witness. Upon the suggestion of said McKenzie that his testimony might render himself liable, and that therefore he hesitated to answer the questions, plaintiff in open court stated that he released McKenzie from all damages that he, McKenzie, was liable to him for, and in consideration of any trespass that he, McKenzie, committed at the time and place mentioned in plaintiff's petition. Witness then stated that at the time of the alleged trespass in plaintiff's petition, at the request of Linnecum, one of the defendants, that some one would lend said Linnecum a handkerchief, witness brought said Linnecum his handkerchief, with which said Linnecum blindfolded the plaintiff."

Defendants then moved that the suit be dismissed, which was overruled. Defendants then asked leave to withdraw their plea and plead a release puis darein continuance, which was overruled; to which defendants excepted.

There are two questions to be decided in this case.

1. Did the court below err in refusing the applications for a continuance?

2. Was the release of McKenzie such a release as would operate in favor of the defendants, who, it is alleged, were cotrespassers?

We are of opinion that an application for the continuance of a cause addresses itself to the discretion of the court, and is to be determined by the court with a proper regard to the circumstances of the case and the nature of the application. And this discretion, in whatsoever manner exercised, will not be revised by this tribunal. We believe that there is

Treasurer v. Wygall, 51 T., 621; Dodson v. Wortham, 18 T. C. A., 666. An individual sued by the State, can not set off claims against State, unless expressly authorized by statute. Borden v. Houston, 2 T., 594; Bates v. Republic, 2 T., 616; Chevallier v. State, 10 T., 315; Dean v. State, 54 T., 313, 314; State v. Snider, 66 T., 687; Sweatman v. Sanders, 85 T., 294, 300.

[3] A colonist was not entitled to a grant as head of a family, unless his family was resident in Texas. Land Commrs. v. Bell, Dal., 366; Land Commissioners v. Reily, Dal., 381; Republic v. Skidmore, Dal., 581 Langford v. Republic, Dal., 588; Republic v. Inglish, Dal., 608; Johns v. Republic, Dal., 621; Grooms v. State, 1 T., 568; Republic v. Skidmore, 2 T., 261; Tichner v. State, 2 T., 269; Lewis v. Ames, 44 T., 319, 345; Lott v. King, 79 T., 292; Hill

nothing in our statutes, or in the rules prescribed for the government of the district courts in regard to continuances, which would lead us to the adoption of a different conclusion. 1 Ala. (N. S.), 276; Hill v. Gayle and Bower, 2 Cond. Rep. (U. S.), 97, 172.

A release entered on the minutes of the court is not such a release as would be binding on the party. Had the witness McKenzie been incompetent from interest, such a release as was here entered would not have made him competent. 2 Porter, 401. A release should be signed, sealed and delivered to the witness to have made it binding. Id. But in this case the release was wholly without consideration and void, of course. If McKenzie had been in truth a joint trespasser, the statute of limitations had barred all right in Boon to maintain an action against him when called on to testify.

Let the judgment of the court below be affirmed.

*Affirmed.*

Concurred in by Judges Baylor and Morris.

Judge William J. Jones says: "I concur in the foregoing opinion, with the understanding, that the error of the judge (if any) may be reached by a motion for a new trial, which should be made by the party refused the continuance in the court below."

Chief Justice Hemphill says: "I concur in the result of the foregoing opinion, but dissent from that portion thereof which decides that the discretion of the court below in relation to continuances is final, conclusive, and not revisable by this tribunal, in whatever manner that discretion may have been exercised."

Judges Jack and William E. Jones say: "We dissent from so much of this opinion as decides that no appeal lies from the decision of a district judge in refusing to grant a continuance upon proper showing. We think the judgment in this case ought to be reversed and the case remanded for a new trial, on the ground that the district judge erred in not granting a continuance. On the other point decided we concur with the majority of the court."

---

v. Moore, 85 T., 335; Byrn v. Kleas, 15 T. C. A., 205; Union Beef Co. v. Thurman, 70 Fed. Rep., 965. An unmarried colonist, under twenty-one years of age, was not entitled to a headright grant. Lockhart v. Republic, 2 T., 127. But it will be presumed from the fact that a headright certificate was granted by the proper authority that the grantee was the head of a family, and evidence is not admissible in a collateral proceeding to show that he was not married and that his family was not in Texas. Johnston v. Smith, 21 T., 722; Bowmer v. Hicks, 22 T., 155; Howard v. Colquhoun, 28 T., 134; Burkett v. Scarborough, 59 T., 495; Capp v. Terry, 75 T., 391; Boone v. Hulsey, 71 T., 176; Hill v. Moore, 85 T., 335; Byers v. Wallace, 87 T., 503. Grant is valid, if the grantee in good faith, intended to move his family to Texas. Republic v. Young, Dal., 464; State v. Skidmore, 5 T., 469; Russell v. Randolph, 11 T., 460. Titles issued by alcaldes and commissioners after closing of Land Office, by Act of Consultation on November 13 1835 (Gammel's Laws of Texas, vol. 1, p. 541), which took effect immediately on adoption, are null and void. Donaldson v. Dodd, 12 T., 381; Spier v. Laman, 27 T., 205; Parker v. Bains, 59 T., 15. If the title was actually issued before November 13, 1835, making out and delivering the testimonio shortly afterwards did not invalidate the title. Houston v. Blythe, 60 T., 506. Holders of orders for surveys and headright certificates, issued prior to November 13, 1835, could only

## No. V.

### ROBERTSON v. McMILLAN.

(See Note 64.)

*Error from Robertson County.*

OCHILTREE, JUSTICE.—Andrew McMillan, the defendant in error, sued Randall Robertson for possession and damages for the occupation of a certain tract of land situate in the county of Robertson.

An issue was made to the country. At the October term, 1840, a jury of twelve men, whose names are set forth in the record, came and were sworn and charged to try the issue joined, viz: James Schofield, Thomas Eaton, J. L. McMurray, R. H. Porter, Robt. M. Christian, Harrison York, S. B. Keloc, E. Donelson, Charles Sevier, James Hudson, J. C. McCristan, George W. Shirer. The jury, after the case had in due form been submitted to them, returned into court this verdict: "We the jury find the issue joined in favor of the plaintiff, and assess his damages to one dollar. (Signed) S. B. Kellough, Foreman."

Immediately in connection with which verdict is this judgment of the court: "Therefore it is considered by the court that the plaintiff recover his costs in this behalf expended, and the defendant," etc.

On the 10th September, 1841, the defendant sued out a writ of error in which was made the following assignments:

1.    That from an inspection of the record there does not appear to have been a lawful jury impaneled to try the issue in the case.

2.    The jury by their verdict do not find that the title to the premises described in said McMillan's petition is in said plaintiff, but find only that his damages are one dollar; and that the judgment rendered thereon by the court is not according to the verdict, because the court awards only that the plaintiff do recover his costs, and gives no judgment for damages.

3.    Assigns error in the execution which issued thereon, etc.

4.    Assignment also relates to a proceeding subsequent to the judgment.

5.    Assignment is, that the petitioner's counsel failed to except to an improper charge of the presiding judge, and asks the revising court to give him the benefit of the error now.

In the examination of this case we will confine ourselves to the judgment and the matters preceding. With the execution, or writ of habere facias possessionem, we have nothing to do. If those proceedings, or either of them, were erroneous, the party agrieved had his remedy in

---

establish their claims in the mode prescribed by Act of December 14, 1837 (Gammel's Laws of Texas, vol. 1, p. 1404), upon proof of facts enumerated in section 12. Land Commissioners v. Reily, Dal., 381; Republic v. Skidmore, Dal., 581; Republic v. Inglish, Dal., 608; Johns v. Republic, Dal., 621; Jones v. Menard, 1 T., 771; Trimble v. Smithers, 1 T., 790; Land Commissioners v. Raguet, 2 T., 98; Land Commissioners v. Riley, 3 T., 237; Capp v. Terry, 75

the court below, from whose final judgment only the right of an appeal lies to this court. We will therefore proceed to a brief examination of the errors assigned, which are properly before us.

1. "From an inspection of the record, there does not appear to have been a lawful jury impaneled to try the issue in the case." We were more particularly informed by the argument as to what was considered by the plaintiff in error the objection to the jury than by the assignment itself. Indeed, from an examination of the record we find nothing approaching error in the impaneling of the jury, for it appears that there were twelve good and lawful men who came and were sworn to try the issue joined between the parties, etc. It is contended, however, that the name of the foreman who returned the verdict of the jury into court does not appear on the lost of jurors. In the list of names we find *S. B. Keloc,* and the name signed to the verdict is *S. B. Kellough.* Without following the learned counsel for the defendant in error in his ingenious argument upon the idioms of different nations, and the arbitrary pronunciation of those proteus letters, "ough," we will say that from all the concurrent circumstances, we are irresistibly led to the conclusion that *S. B. Keloc* and *S. B. Kellough* are one and the same persons.

We hardly think that the presiding judge would have permitted a substitute to have taken the prominent position of foreman of the jury, or that the astute counsel for the defendant below would have failed to have observed it and predicated a motion for a new trial or in arrest of judgment, for an error so glaring. We think it was a clerical error, and nothing more.

2. "The jury by their verdict do not find that the title to the premises described in said McMillan's petition is in said plaintiff, but find only that his damages are one dollar, and that the judgment rendered thereon by the court is not according to the verdict, because the court awards only that the plaintiff do recover his costs, and gives no judgment for damages."

The verdict of the jury in this case is not a mere finding for the plaintiff; it goes farther: "We the jury find the *issue joined* for the plaintiff, and assess his damages at one dollar." Here is a manifest reference by the jury to the pleadings. What was the issue joined? The right of possession to the land, described in the plaintiff's petition and defendant's answer, as being the subject of dispute. A verdict, it is true, might have been rendered by the jury more descriptive and more technical; yet we believe that the manifest intention of the jury was to find that the land in contest was the property of the plaintiff, and we will not disturb it. It is considered by the court here, that

---

T., 391. All certificates returned by commissioners as genuine, but not recommended on account of want of oath required by section 12 of Act of December 14, 1837, were validated and directed to be patented by Act of January 19, 1841 (Gammel's Laws of Texas, vol. 2, p. 528), Whitehead v. Foley, 28 T., 1; Spofford v. Bennett, 55 T., 293. Under Act of February 5, 1840 (Gammel's Laws of Texas, vol. 2, p. 335), patents could only issue on certificate of recommendation from Board of Land Commissioners and holders of unrecommended land certificates had no standing in court without it. Norton v.

inasmuch as the judgment of the court below does not respond to the verdict of the jury, the same be reversed, and that this court will proceed to render such judgment thereon as should have been rendered in the court below. It is therefore considered by the court, that the plaintiff in the court below do recover of the defendant below the premises, together with one dollar for his damages, and all his costs in this behalf expended; and that the proper writs issue to carry out this judgment.

*Reversed and rendered.*

## No. VI.

## J. & D. HOLDEMAN v. KNIGHT & WHITE.

### (See Note 65.)

*Error to the District Court of Bastrop.*

JONES (WILLIAM E.), JUSTICE.—On the 20th August, 1836, Jesse and David Holdeman made their joint and several promissory note to James Knight and Walter C. White, for the sum of $5000, payable on the 1st day of January, 1838, and at the same time executed and delivered a mortgage to secure the payment of the note, upon a league of land on the Colorado River. At the spring term of the District Court for the County of Bastrop, for 1838, Knight, as surviving partner, and James A. White, as administrator of Walter C. White, filed their petition, praying judgment against the Holdemans on the note and a foreclosure of the mortgage. The defendants made no defense in writing, but demurred ore tenus to the plaintiff's petition, which was overruled by the court and a judgment nisi rendered against the defendants, which at a succeeding term, November, 1840, was rendered final, a decree of foreclosure made, and the mortgaged premises ordered to be sold. In March, 1841, the defendants below prayed a writ of error, which being granted, the proceedings are certified to this court for revision.

Five several grounds of error are assigned and relied on for a reversal of the judgment of the court below, which we shall consider in the order in which they are presented.

First. A misjoinder of parties plaintiff in joining Knight, the survivor, with the administrator of the deceased partner White. At common law it can not be doubted, that the surviving partner is the proper plaintiff in suits on behalf of the interests of the partnership, and that the administrator of a deceased partner could not be joined as a co-plaintiff with the survivor. This suit was instituted before the introduction of the common law and before the Act of May, 1838, which prescribed the manner of foreclosing mortgages; and the points for our

Land Commissioner, 2 T., 357; Bracken v. Wells, 3 T., 88, 90; Kemper v. Victoria, 3 T., 135; Miller v. Brownson, 50 T., 583. All surveys supported by recommended certificates valid; without them, invalid. Warren v. Shuman, 5 T., 441; Scott v. Mather, 14 T., 235; Whitehead v. Foley, 28 T., 268. Headright certificate is not color of title, unless recommended. Horton v. Craw-

consideration must therefore be determined by the rules of the civil law, which was in force at the period of the institution of the suit. The want of civil law works is an acknowledged grievance of no small magnitude, and compels us often to make decisions upon important questions with but few of the authorities upon which the principles are settled. The case under consideration is one of that character, and as we can not have access directly to works which treat minutely of pleadings in the courts under that system, we are compelled to resort to the Louisiana decisions as likely to approximate nearest to those of the civil law. The principles of that system of laws in relation to partnership and the consequences of a dissolution are evidently materially different from those of the common law. In Morris's Heirs v. Ogden's Executor, 11 M. R., 455, it was determined that, "in an ordinary commercial partnership, dissolved by the death of a partner, his heirs have a right to participate with the surviving partners in the liquidation of the partnership affairs, till a partition takes place; and if one of the partners sues to recover a debt due the former firm, the others may be made parties for the assurance of their rights." And in Crozier v. Hodge, 3 L. R., 358, it was determined, that a partner *as such* had no right to sue for or recover debts due from the firm, after the death of a copartner. But the question now under consideration seems to have been directly decided in the case of Cutter v. Cochran, 13 L. R., 485, cited in Benjamin & Slidell's Digest, page 480, section 17, in which it was held that, "on the dissolution of a firm by the death of a partner, the surviving partner can not sue without joining the representatives of the deceased one." In England, where a mortgage is made to two partners and one of them dies, the right of survivorship incident to joint tenancy does not accrue, but an estate in common is created between the survivor and the heirs of the deceased (Rigden v. Vallier, 2 Vesey, 258); and it might therefore be doubted whether, inasmuch as the foreclosure of a mortgage is a chancery proceeding, it would not be proper in England to join the heirs of the deceased with the survivor, in seeking a decree of foreclosure. It is not however essential to our present purpose to decide such a question, as the principles of the English law have nothing to do with the point under consideration; and as the plaintiffs below admit that this was a partnership transaction, the doctrine above stated, which might otherwise apply to this case, is rendered inapplicable. We can not perceive, from all the authorities within our reach, that at the time of the institution of this suit it was improper to join the administrator of the deceased partner as a coplaintiff with the survivor. Nor

ford, 10 T., 382; Whitehead v. Foley, 28 T., 268. Prohibition in Act of February 5, 1840, against surveys on unrecommended certificates after May 1, 1840, did not legalize surveys made either prior or subsequently on unrecommended certificates. Warren v. Shuman, 5 T., 441. It seems that surveys on genuine headright certificates are valid, though not recommended by commissioners. Howard v. Perry, 7 T., 259; Hart v. Gibbons, 14 T., 213. But under Act of January 29, 1840 (Gammel's Laws of Texas, vol. 2, p. 313), authority to issue patents on first class headright certificates, was based on recommendation. Miller v. Brownson, 50 T., 583. Under extension of time

can we perceive any possible injury which can result to the defendants below by such joinder; none of *their* rights are in any way affected or compromitted by it.

The second ground of error assigned is, that the administrator, if not improperly joined, did not make a profert of his letters of administration. This objection not having been made in the court below, it is too late to attempt to take advantage of it now, were it even deemed a necessary averment.

The third ground is, that the instrument prayed to be foreclosed is not a mortgage, and that it was executed by but one of the defendants, and that there was no proof of a partnership between them. The instrument on its face purports to be a mortgage; and although it is not in the usual form known to the common law, of an absolute conveyance by deed, with a condition to be void upon payment of the debt for which it is pledged, yet we can not look upon it as anything else but a mortgage of a strongly marked character. The parties appear to have been unusually circumspect in its execution in the presence of a large number of subscribing witnesses, and they expressly "pledge, hypothecate and mortgage" the land described in it, and stipulate that on failure to pay their debt, the judge having jurisdiction of such cases may order a sale of the premises to raise the money. The objection that it was executed by Jesse Holdeman only, and that there is no proof of partnership, is entirely obviated by the act of David Holdeman in his acknowledgment before the chief justice of Bastrop County, as notary public, that Jesse Holdeman was authorized to execute the instrument.

It is urged in the fourth place that there was a misjoinder of actions in praying for judgment on the note and a foreclosure of the mortgage in the same action; and that thereby the defendants were deprived of the right of a trial by jury. This ground is equally untenable with the others. It can not be denied that the plaintiffs had a right to proceed to judgment on the debt in a common law action, or to procure a decree in chancery for the foreclosure of the mortgage. A plaintiff may elect either remedy, or he may proceed with both concurrently. 4 Kent, 184. Where the chancery and common law jurisdictions are vested in separate tribunals, if he availed himself of both remedies it would necessarily have to be done in separate courts; but under our laws both jurisdictions are blended in the same tribunal, and as the plaintiff can have but one satisfaction, there can be no necessity for him to seek but one judgment, or be compeled to resort to two suits, in the event the mortgaged premises do not satisfy the debt. We are of the opinion that it is a correct practice to proceed at the same time, and in the same action,

---

allowed by Constitution of 1845, a survey made on an unrecommended certificate prior to January 1, 1844, suit to establish claim could be maintained in 1847. Lewis v. Mixon, 11 T., 564; Hart v. Gibbons, 14 T., 213; Scott v. Mather, 14 T., 235. Under Act of February 7, 1860 (Gammel's Laws of Texas, vol. 4, p. 1410), providing for re-examination of rejected warrants and certificates, a rejection made before limit of time fixed in section 11 is not void, the object of the statute being to give claimants ample time to prove their claims. Durrett v. Land Commissioner, 28 T., 687. Under Act of April

to seek a judgment on the debt and a decree of foreclosure of the mortgage. The defendants can not complain that they were deprived of a trial by jury; they made no defense in the court below to the merits of the case and were therefore not entitled to a trial by jury; they relied both in that court and in this on technicalities, and it is too late to complain of being deprived of a trial by jury, which they never sought.

The fifth and last objection—that there is no judgment rendered in the court below upon which an execution can issue—is easily remedied by rendering such judgment here. A judgment nisi having been previously taken for the principal sum of $5000, with interest at 5 per cent per annum from January 1, 1838, and costs, and at the November term, 1840, the same having been made final, without computing the interest up to the judgment, and the same being defective, the court proceeds to render such judgment as should have been rendered below. It is therefore ordered, adjudged and decreed by the court here, that the judgment of the court below be set aside, and that the defendants in error in this court do recover of the plaintiffs in error the principal sum of $5000 debt, and the further sum of $703.33, interest up to the 23d November, 1840, with interest on the principal sum at 5 per cent per annum from the 23d November, 1840, until paid; together with costs of suit in this behalf expended. It is further ordered, adjudged and decreed, that the mortgage described in the petition of the plaintiff in the court below be foreclosed; and that the mortgaged premises in said mortgage described be exposed to sale in terms of the statute, and the surplus, if any there be arising from the sale, be paid to the appellants; and if there shall not be a sufficiency to satisfy this judgment, that the appellees have execution for the residue; and that this judgment be certified below for execution.

*Reversed and rendered.*

## No. VII.

### JAMES SMITH V. NATHANIEL TOWNSEND.

#### (See Note 66.)

*Appeal from Travis County.*

HEMPHILL, CHIEF JUSTICE.—The action in this case was instituted for the recovery of damages for alleged trespass on real property. During the progress of the trial an instrument was introduced purporting to be a copy of a public act of sale from one Jesse C. Tannehill to the plaintiff, which was objected to; and a bill of exceptions is filed in the record, containing all the points in controversy on which the action

25, 1871 (Gammel's Laws of Texas, vol. 6, p. 962), holders of unlocated certificates were not required to locate them at any particular period between passage of law and January 1, 1875. Laws in force prior to Act of November 29, 1871 (Gammel's Laws of Texas, vol. 7, p. 47), did not require certificate and field notes to be returned within twelve months after survey. Snider v. I. & G. N. Ry. Co., 52 T., 306; Snider v. Methvin, 60 T., 487. Under Rev.

of this court is requested. The competency of the instrument as evidence is excepted to on the grounds:

1.   That the instrument was not the original deed from Tannehill to plaintiff.

2.   If it were, the same was not sufficiently authenticated.

Tannehill proved that he never signed the instrument referred to, but that he had conveyed the land therein described, by another deed signed by himself. It was in proof that such instruments were made out as second originals, in conformity to the then custom of the country; that the second original was never signed by the grantor or grantee, but by the judge of the first instance, or other officer, with instrumental and assisting witnesses, and that the same, when thus executed, etc., was the only evidence of title which the grantee received from the grantor.

The instrument, to the introduction of which exception was taken, has been sent up to this court for inspection, and purports to be a copy of a public act of sale, executed on April 25, 1835, in the town of Mina, before Thomas J. Gazley, judge of the first instance of the jurisdiction of Mina. It is certified to be a true copy of the original (with the addition of the plot), which remained in the office, under the charge of the said judge. The certificate was dated on the day of the execution of the original, and was signed by the said judge with two assisting witnesses.

In considering the first objection, we have to regret that the want of authorities in relation to the former laws of the country prevents us from attaining—on some of the points involved in this case—to conclusions which are altogether satisfactory. Guided, however, by the feeble and confused lights with which we are furnished, we proceed to decide this controversy, confining our opinion to the points which must necessarily be adjudicated.

No objection was taken to the act as not having been executed before a notary public, and any examination of the powers of a judge of the first instance to authenticate public instruments is therefore rendered unnecessary. It was treated as a notarial act and will be considered as such.

Is, then, a copy of a notarial act admissible in evidence without the production of the original? And if so, does the mere production of the instrument cause full proof of its contents, without evidence as to the capacity or signature of the notary and assisting witnesses?

In the case of the United States v. Perchman, 7 Peters, 51, the claimant offered in evidence a copy, from the office of the keeper of the public archives, of the original grant on which the claim was founded; and it

---

Stats. 1895, arts. 4138 and 4145, survey must be made within twelve months after entry, and field notes returned within twelve months after survey. Von Rosenberg v. Cuellar, 80 T., 249. So long as the title is imperfect or inchoate, the State may establish such regulations as it may deem necessary to perfect the title, and attach such terms as it may deem proper. It may even disavow. Land Commissioners v. Reily, Dal., 381; Johns v. Republic, Dal.,

was decided, that on general principles of law, a copy given by a public officer, whose duty it is to keep the original, ought to be received in evidence. The seal and signature of the governor who made the grant was proved; and the judge in the court below added, "that where either party would suggest that the original in the office of the keeper of the public archives is deemed necessary to be produced in court, on motion therefor a subpœna will be issued by order of the court for said keeper to appear and produce the original for examination."

Justice Story in delivering the opinion of the court in Owings v. Hull, 9 Peters, 625, after noticing the high credit and authenticity of contracts and other acts executed before notaries in Louisiana and in all other countries using the civil law, proceeds to state, that "where a contract or other act is executed in a particular manner before a notary, the proctocol or original remains in his possession apud acta; and the act is deemed what is technically called 'an authentic act;' and a true copy by the notary, who is the depository of the original, or his successor, is deemed proof of what is contained in the original; for the plain reason, that the original is properly in the custody of the officer and not deliverable to the parties." He refers to the Civil Code of Louisiana from article 2231 to 2250. "It was decided that, the absence of the original being duly accounted for by its remaining in possession of the notary, the copy being *duly proved* was properly admissible in evidence."

In the case of Mitchell v. United States, 9 Peters, 732, objection was made to the admission of copies of certain acts of confirmation of Indian sales made by Governor Folet. It was not sustained. The court say, "that deeds of confirmation were made according to the rules of the civil law adopted by Spain, and in force in Florida and Cuba. The original is a record and preserved in the office, which can not be taken out; a testimonio, or copy, is delivered to the party, which is deemed to be and is certified as an original paper, having all the effect of one in all counties governed by the civil law." The instruments produced were regarded by the court as original deeds of confirmation. Their authenticity as public documents was proved, and the official signatures were established by the testimony of witnesses.

Adverting now to such Spanish works as are within reach of the court, we find Sala in his fourth book treating, but briefly, of the execution of public instruments and their force and effect when introduced in evi-

---

621; Hosner v. De Young, 1 T., 764; Jones v. Menard, 1 T., 771; Trimble v. Smithers, 1 T., 790; Land Commissioners v. Raguet, 2 T., 98; Norton v. Land Commissioner, 2 T., 357; League v. De Young, 2 T., 497; Kemper v. Victoria, 3 T., 135; Land Commissioners v. Riley, 3 T., 237; Smith v. State, 5 T., 397; Jones v. Borden, 5 T., 410; Warren v. Shuman, 5 T., 441; Land Commissioners v. Smith, 5 T., 471; Paschal v. Perez, 7 T., 348; Lewis v. Mixon, 11 T., 564; Hart v. Gibbons, 14 T., 213; Hamilton v. Avery, 20 T., 612; Peck v. Moody, 23 T., 93; Sherwood v. Fleming, 25 T. Supp., 408; Smith v. Taylor, 34 T., 589; Snider v. Methvin, 60 T., 487; Capp v. Terry, 75 T., 391; Jones v. Lee, 86 T., 25; Thompson v. Baker, 90 T., 163; League v. De Young, 11 How., 185. Applicant to establish headright claim under Acts of December 14, 1837, and February 4, 1841, was required to prove both actual residence at date of declaration of independence and continued residence to time of making application to establish claim. Republic v. Skidmore, Dal., 581; Jones v. Re-

dence.   We have not discovered in this work any satisfactory solution
of the question under consideration.    In Book 3, title 7, of the Institutes
of Aso and Manuel, page 297, it is laid down, that a "public instrument
is divided into three classes: the original draft, register, or protocol—the
original—and the copy.   The register is the original draft, or writing,
which is delivered and remains in possession of the escribano, which we
also call protocol; by which doubts are determined that may be offered
with respect to the instruments which are copied from it.    The deed
which is immediately copied from the protocol is the original, which
causes faith; inasmuch as it is authorized by the public escribano, before
whom it passed, or by him to whom the protocols of the latter have
passed; but if another escribano copies it, with the authority of the
judge and citation of the party, it is valid."

In 3 Partidas, title 19, Law 9, notaries are required to have a book
to serve as a register, in which they must write the minutes of every
act required by the contracting parties; from which they draw up the
public act itself and deliver it to the person entitled thereto.    In a note
to this law a decree is referred to, from which doubtless may be deduced
the practice of executing notarial instruments as known to this country
under its former laws and governments.    In this decree, dated in 1503,
notaries were required to draw up on their registers the original act in
full, and not by notes or minutes.    A copy is then furnished the party
to serve him instead of the act itself, which was formerly made out
from such notes.    Febro. Lib. Escrie, chap. 16, Nos. 3, 9.

From the authorities and laws to which we have referred, as well as
from the facts proven in this case, we conclude that copies of notarial
acts were (at the time of the execution of this instrument) regarded
in contemplation of law as originals; that they were the only evidence
of title which the party interested was entitled to retain in his posses-
sion, and that they are properly admissible for all the purposes which
by the introduction of the originals themselves could be effected.    In the
cases of Perchman and Mitchell et al., cited from the United States
Reports, proof was made of the official seal and signature of the public
officer from whom the copies emanated; and in the case of Owings v.
Hull the copy of the notarial act is described as duly proven.    In the
case before us, no objection was urged on the ground that proof was
not made of the official capacity and signature of the judge, or of the
signatures of the witnesses.    The court at which the trial below was
had was within the limits of the territory once designated as the juris-
diction of Mina, and the facts above alluded to were perhaps matters of
public notoriety, and proof of them was not required.    We confine our-
selves however to the grounds on which this appeal was taken, and will

public, Dal., 621; State v. De Casinova, 1 T., 401; Grooms v. State, 1 T., 568;
Republic v. Skidmore, 2 T., 261; Tichner v. State, 2 T., 269; Land Commis-
sioners v. Riley, 3 T., 237; Paschal v. Perez, 7 T., 348; Jones v. Montes, 15
T., 351.    Under Act of February 5, 1841 (Gammel's Laws of Texas, vol. 2, p.
635), applicants for headright claims were required to make same proofs as
under Act of December 14, 1837 (Gammel's Laws of Texas, vol. 1, p. 1404).

not enter into the question of the proofs, which under many circumstances might be required, to establish the authenticity of copies of public instruments; nor will we enumerate the cases in which the production of the originals might be deemed essential, nor the causes for which their validity might be attacked and destroyed.

These and similar questions will be disposed of when they properly arise in cases which may be presented for our consideration.

The second objection urged in the bill of exceptions is, that the instrument before us is not sufficiently authenticated.

This is vague and indefinite in its terms, and no notice having been taken of it in the argument, we can not ascertain with any certainty the grounds on which it was raised. There being no glaring defect of authenticity in the instruments and none being pointed out for the inspection of the court, we will pass over this point without further remark or attention. The law and facts of this case being considered, we are of opinion that the court below did not err in admitting the instrument excepted to; and it is therefore ordered, adjudged and decreed that the appeal be dismissed.

*Dismissed.*

## No. VIII.

### Corporation of Bastrop v. Gilmore and Redding.

*Appeal from Travis County.*

HEMPHILL, Chief Justice.—In this case, judgment being given for defendants in the court below, the corporation appealed and (as stated in the record) entered into bond and security for the costs according to law. No copy of this bond was sent up with the transcript, and the appellees not having appeared in court and waived any rights to which they are by law entitled, we are of opinion that the case is not properly before us for adjudication, and it is therefore, ordered that the same be dismissed.

*Dismissed.*